## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **STACEY KIBODEAUX, a/k/a** | § | |
| **"ILLUSION,"** *et al.*, **individually, and** | § | |
| **on behalf of all others similarly** | § | |
| **situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **CIVIL ACTION NO. 3:20-cv-00008** |
| | § | |
| **A&D INTERESTS, INC., d/b/a** | § | |
| **HEARTBREAKERS GENTLEMAN'S** | § | |
| **CLUB,** *et al.*, | § | |
| | § | |
| **Defendants** | § | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS'
## <u>MOTION FOR ISSUANCE OF NOTICE PURSUANT TO § 216(B)</u>

Defendants A&D Interests, Inc., d/b/a Heartbreakers Gentleman's Club, Mike Armstrong, and Peggy Armstrong (collectively, "Defendants") file this Response to Plaintiffs' Motion for Issuance of Notice Pursuant to § 216(b) of the Fair Labor Standards Act.

# TABLE OF CONTENTS

SUMMARY OF THE ARGUMENT ........................................................... 1

BACKGROUND ................................................................................. 1

ARGUMENTS & AUTHORITIES ............................................................ 4

I.   The Existence of Arbitration Agreements Precludes Conditional Certification. ......... 5

     A.   It is error to notify potential plaintiffs who signed arbitration agreements. ...... 5

     B.   All putative opt-ins have executed arbitration agreements. ............................ 7

II.  Plaintiffs Have Not Met Their Lenient Notice Stage Burden. .................................... 8

     A.   Plaintiffs fail to describe their job requirements. ............................................ 9

     B.   "Substantial allegations" of a single decision, policy or plan are missing. ...... 11

III. Plaintiffs' Notice and Consent to Join Forms Are Defective. .................................... 15

     A.   The proposed notice forms are inaccurate and omit material information. ...... 15

     B.   Defendant-sponsored virtual and physical postings are unwarranted. ............ 18

     C.   The production and scope of the class list must be modified. ......................... 20

IV.  Existing communications directed to potential plaintiffs must be monitored. ........... 21

CONCLUSION ................................................................................. 24

**Cases**                                                                  **Page(s)**

*Andel v. Patterson-UTI Drilling Co., LLC*,
    280 F.R.D. 287 (S.D. Tex. 2012) ............................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................... 12

*Bates v. Arizona State Bar*,
    433 U.S. 350 (1977) ................................................................................... 22

*Behnken v. Luminant Min. Co., LLC*,
    997 F. Supp. 2d 511 (N.D. Tex. 2014) ....................................................... 17

*Belt v. Emcare, Inc.*,
    299 F. Supp. 2d 664 (E.D. Tex. 2003) ....................................................... 22

*Bigger v. Facebook, Inc.*,
    947 F.3d 1043 (7th Cir. 2020) ..................................................................... 5

*Bramble v. Wal–Mart Stores, Inc.*,
    No. 09–CIV–4932(TNO), 2011 WL 1389510 (E.D.Pa. Apr. 12, 2011) ...................... 12

*Byrne v. Santa Barbara Hosp. Services, Inc.*,
    2018 WL 10483678 (C.D. Cal. Dec. 14, 2018).............................................. 23

*Central Hudson Gas and Electric Corp. v. Public Service Comm.*,
    447 U.S. 557 (1980) ................................................................................... 19

*Forbis v. Ignite Rest. Group, Inc.*,
    CV 16-0548, 2017 WL 1336072 (W.D. La. Apr. 6, 2017) ........................... 13

*Freeman v. Progress Residential Prop. Manager, LLC*,
    3:16-CV-00356, 2018 WL 1609577 (S.D. Tex. Apr. 3, 2018) ....................... 9

*Genesis Healthcare Corp. v. Symczyk*,
    569 U.S. 66 (2013) ..................................................................................... 5

*Gulf Oil Company v. Bernard*,
    452 U.S. 89 (1981) ..................................................................................... 22

*Harris v. Fee Transp. Services, Inc.*,
    CIV.A.3:05CV0077-P, 2006 WL 1994586 (N.D. Tex. May 15, 2006)..................... 12

*Heeg v. Adams Harris, Inc.*,
    907 F. Supp. 2d 856 (S.D. Tex. 2012)....................................................... 12

*Hoffmann–La Roche v. Sperling*,
    493 U.S. 165 (1989) ............................................................................. 4, 15

*In re JPMorgan Chase & Co.*,
    916 F.3d 494 (5th Cir. 2019).......................................................... 5, 6, 7, 8

*Janus v. Am. Fed'n of State, County, & Mun. Employees, Council 31*,
    138 S. Ct. 2448 (2018)............................................................................... 19

*Laney v. Clements Fluids Mgmt., LLC*,
   6:18-CV-00497, 2020 WL 1451739, (E.D. Tex. Mar. 25, 2020)....................................4

*Lawrence v. A-1 Cleaning & Septic Sys., LLC*,
   4:19-CV-03526, 2020 WL 2042323 (S.D. Tex. Apr. 28, 2020) .................................9

*Lusardi v. Xerox Corp.*,
   118 F.R.D. 351 (D.N.J. 1987) ...........................................................................4

*Madrid v. Pine Maintenance, Inc.*
   4:19-CV-04336, 2020 WL 2750053 (S.D. Tex. May 27, 2020) .................................8

*McElroy v. Tucker Energy Services, Inc.*,
   SA-18-CV-00010-FB, 2018 WL 5304118 (W.D. Tex. Oct. 25, 2018)...................11, 14

*McKnight v. D. Houston, Inc.*,
   756 F. Supp. 2d 794 (S.D. Tex. 2010)...........................................................8

*Miller v. MV Transp., Inc.*,
   331 F.R.D. 104 (W.D. Tex. 2019).................................................................7

*Mooney v. Aramco Servs. Co.*,
   54 F.3d 1207 (5th Cir. 1995) .......................................................................9

*Moran v. Ceiling Fans Direct, Inc.*,
   CIVA H-06-0813, 2006 WL 2868939 (S.D. Tex. Oct. 5, 2006) .........................18

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010) .........................................................................4

*Parrish v. Premier Directional Drilling*, L.P.,
   917 F.3d 369 (5th Cir. 2019) .....................................................................13

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .....................................................................................5

*Quintanilla v. A & R Demolitina, Inc.*,
   2005 WL 2095104 (S.D. Tex. Aug. 30, 2005)..............................................16

*Reich v. ABC/York-Estes Corp.*,
   64 F.3d 316 (7th Cir. 1995)........................................................................23

*Reyes v. Quality Logging, Inc.*,
   52 F. Supp. 3d 849 (S.D. Tex. 2014).............................................................17

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
   547 U.S. 47 (2006) ...................................................................................19

*Scantland v. Jeffry Knight, Inc.*,
   721 F.3d 1308 (11th Cir. 2013) ..................................................................13

*Senegal v. Fairfield Indus., Inc.*,
   CV H-16-2113, 2017 WL 1134153 (S.D. Tex. Mar. 27, 2017) .........................18

*Thomas v. Argos USA, LLC*,
   H-19-1941, 2019 WL 5213290 (S.D. Tex. Oct. 16, 2019) ...............................8

*Tillis v. Glob. Fixture Services Inc.*,
    4:19-CV-01059, 2020 WL 1443490 (S.D. Tex. Mar. 23, 2020) ................................... 9

*Tolentino v. C & J Spec-Rent Services Inc.*,
    716 F. Supp. 2d 642 (S.D. Tex. 2010) ................................................................. 16, 17

*Villatoro v. Kim Son Rest., L.P.*,
    286 F. Supp. 2d 807 (S.D. Tex. 2003) ........................................................................ 11

*Yaklin v. W-H Energy Services, Inc.*,
    CIV.A. C-07-422, 2008 WL 1989795 (S.D. Tex. May 2, 2008) ................................. 17

## <u>Statutes</u>

29 U.S.C. § 216(b) ............................................................................................................... 4

<u>**SUMMARY OF THE ARGUMENT**</u>

Plaintiffs' Motion for Issuance of Notice should be denied for three central reasons:

*First*, the Fifth Circuit has held that notice may *not* be issued to individuals with a valid arbitration agreement. Since 2014, all performers at Heartbreakers have executed agreements containing arbitration agreements. *In re JPMorgan Chase & Co*., 916 F.3d 494 (5th Cir. 2019).

*Second*, Plaintiffs have failed to satisfy their lenient burden of demonstrating that they are "similarly situated" to the potential plaintiffs whom they wish to notify. Plaintiffs' submissions lack basic details about their job requirements and the allegedly unlawful common policy or practice.

*Third*, even if conditional certification is granted, Plaintiffs should be ordered to submit revised notice and consent to join forms as their current versions lack crucial information and must be viewed in light of existing communications to potential litigants.

<u>**BACKGROUND**</u>

A&D Interests, Inc. operates Heartbreakers, an adult cabaret located in Dickinson, Texas. Mike Armstrong is the president of A&D Interests, while his wife, Peggy Armstrong, is its secretary and treasurer.[1]

Before performing at Heartbreakers, all exotic dancers are required to execute either an "Independent Contractor License Agreement" ("ICLA") or an Employment Agreement.[2] The agreements signify the capacity in which entertainers choose to

---

[1] Declaration of Peggy Armstrong ("P. Armstrong Dec."), ¶ 2
[2] *Id*., ¶ 8.

1

perform—either as an employee or independent contractor—and spell-out the respective distinctions between these two paths.[3]

Entertainers who decide to execute the ICLAs agree to a working relationship with Heartbreakers consistent with status as an independent contractor. For instance, entertainers who execute ICLAs are permitted to dance at the Club or not dance at all.[4] They are not required to perform during any particular shift and may perform on days and at times of their own choosing.[5] Although they are required to pay a "floor fee" ranging from $27 to $57 depending on the day and time of their arrival,[6] entertainers who execute ICLAs are contractually entitled to retain all of the income from their labor and they are not obligated to make any other payments to the Club.[7]

In contrast, entertainers who elect to execute the Employment Agreement perform under a different arrangement. Although they are guaranteed $2.13 per hour plus tips,[8] the Club may assign them various duties, ranging from dancing to serving food and drink.[9] The number of dances they sell are subject to being tracked, they are not permitted to

---

[3] *Id.*, ¶ 3.

[4] **Exhibit A**, Independent Contractor/License Agreement Between A&D Interests, Inc. and Independent Contractor ("ICLA") ¶¶ 2(b), 3(a).

[5] *Id.*, p. 2, ¶ 2(b).

[6] *Id.*, p.1, ¶ 2,

[7] *Id.*, ¶ 3(a).

[8] **Exhibit B**, Employment Agreement Between A&D Interests, Inc. and Employee ("Employee Agreement") ¶ 4(a).

[9] *Id.*, ¶ 2.

charge less than $20 for performing dances, and they must remit a portion of their earnings from every dance to the Club.[10]

Despite electing to execute the ICLAs,[11] Plaintiffs allege that Defendants misclassified them as independent contractors, failed to pay them statutory wages as required under the Fair Labor Standards Act ("FLSA"), and subjected them to various fees, fines, and penalties.

Plaintiffs' First Amended Complaint, Motion for Issuance of Notice, and boilerplate declarations[12] are typified by legal conclusions and threadbare factual allegations. Beyond averring that "I was an exotic dancer/entertainer,"[13] they say little about their job duties and alleged experiences at Heartbreakers. Few meaningful details are offered to support broad statements such as "Defendants also exercised a great deal of control over how I and all other dancers/entertainers performed."[14]

Based on their bare claims and conclusory representations, Plaintiffs ask the Court to conditionally certify this case and authorize notice to potential plaintiffs.

---

[10]  *Id.*, ¶ 3.

[11]  P. Armstrong Dec., ¶ 6, **Exhibits C, D, E,** and **F**.

[12]  Plaintiffs' declarations closely mirror the declarations that others have executed in other cases filed against adult cabarets around the nation. *See* Declaration of Angelica Mora, *Angelica Mora v. Stars Planet, Inc., et al.*, Case No. 2:20-cv-00414-JFW-JC, Central District of California, Western Division [Dkt. No. 50-3]; Declaration of Steffanie Agerkop, *Steffanie Agerkop, et al., v. Sisyphian, LLC*, et al., Case No. 2:19-cv-104140CBM-JPR, Central District of California, Western Division [Dkt. No. 28-1]; Declaration of Sonya Harris, *Teal Herek v. Circle 2, Inc. et al.*, Case No. 3:20-cv-00058, Eastern District of Virginia, Richmond Division [Dkt. No. 18-7]. Courtesy copies are attached as **Exhibit G**.

[13]  *See* Declaration of Stacey Kibodeaux ("Kibodeaux Dec."), ¶ 4; Declaration of Hailey Chapman ("Chapman Dec."), ¶ 5; Declaration of Jean Hoffmeister ("Hoffmeister Dec."), ¶ 5; Declaration of Roxanne Murillo ("Murillo Dec."), ¶ 5.

[14]  *See, e.g.*, Kibodeaux Dec., ¶ 18

<u>**A**RGUMENTS **& A**UTHORITIES</u>

The FLSA permits a person to maintain an action on "behalf of [herself] … and other employees similarly situated." 29 U.S.C. § 216(b). In *Hoffman–La Roche, Inc. v. Sperling*, the Supreme Court explained that pursuant to Section 216(b), courts are vested with the "requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffmann–La Roche v. Sperling,* 493 U.S. 165, 171 (1989).

This procedural authority includes the power to "conditionally certify" a collective action.[15] Conditional certification is a status that "is neither necessary nor sufficient for the existence of a representative action under the FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 555, n. 10 (2d Cir. 2010), quoting *Hoffmann–La Roche*, 493 U.S. at 169. This status does not enhance the scope of a representative plaintiff's rights under the FLSA, augment her own potential recovery, create a class with an "independent legal status," or grant her a personal interest in the claims of unnamed claimants. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013). The "sole consequence of

---

[15] Neither Congress nor the Supreme Court have made clear what standards apply to conditional certification. *See Laney v. Clements Fluids Mgmt., LLC*, 6:18-CV-00497, 2020 WL 1451739, at \*3 (E.D. Tex. Mar. 25, 2020) (observing that "[n]o statute or rule directs a particular process for making the similarly-situated determination…."). While the Fifth Circuit has avoided adopting any particular approach, most district courts rely on the two-stage *Lusardi* framework. *See In re JPMorgan,* 916 F.3d 494, 500 (5th Cir. 2019), citing *Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D.N.J. 1987). At the 'notice' stage, the court first makes a preliminary determination whether plaintiffs are "similarly situated." Then, after discovery has matured, the defendant has an opportunity to move for decertification of the collective on grounds that plaintiffs are not "similarly situated." *Id.*

4

conditional certification is the sending of court-approved written notice to employees[.]" *Id*. at 75.

The grant of conditional certification and permission to disseminate notice are not automatic. "*Hoffmann-La Roche* … states only that district courts have the discretion to facilitate notice—not that they must." *In re JPMorgan Chase & Co*., 916 F.3d 494, 503 n.19 (5th Cir. 2019). Unlike Rule 23 class actions, notice in a collective action is not deeply rooted in protecting the due process rights of absent class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Instead, the process is founded in judicial economy. As for a defendant, notice means one thing: the expansion "of the litigation with additional plaintiffs [which] increases pressure to settle, no matter the action's merits." *Bigger v. Facebook, Inc*., 947 F.3d 1043, 1049 (7th Cir. 2020).

## I.   The Existence of Arbitration Agreements Precludes Conditional Certification.

As a threshold matter, Plaintiffs incorrectly state that "the fact that a FLSA plaintiff has signed an arbitration agreement will not preclude certification of a collective action." (Motion, ECF p. 26). While the law might be different in the Ninth Circuit, it is clear in this circuit that "*Hoffmann-La Roche does not* give district courts discretion to send or require notice of a pending FLSA collective action to employees who are unable to join the action because of binding arbitration agreements." *In re JPMorgan Chase*, 916 F.3d at 504 (emphasis added).

## A.   It is error to notify potential plaintiffs who signed arbitration agreements.

Beginning with the premise that notice is necessary in order to serve the "purposes of the FLSA," Plaintiffs advance various theories why notice should be sent to potential

plaintiffs in this matter, even if those individuals have arbitration agreements with Defendants. The Fifth Circuit has rejected Plaintiffs' arguments.

First, the idea that notice must be given to "workers who wish to pursue their claims" so that they "will at least have the practical ability to do so through arbitration" (Motion, ECF p., 28), runs afoul of *JPMorgan's* core admonition—sending notice of a collective action to those who have agreed to submit their claims to arbitration implicates a "multiplicity of proceedings" and therefore "reaches into disputes beyond the 'one proceeding.'" *In re JPMorgan Chase*, 916 F.3d at 502, n. 15. Thus, "alerting those who cannot ultimately participate in the collective 'merely stirs up litigations'" and "comes close to the 'solicitation of claims' forbidden by *Hoffmann–La Roche*." *Id.*, at 503-04.

Plaintiffs conflate the sending of notice with a sort of substantive right necessary to preserve unasserted claims against the running of the statute of limitations. (Motion, ECF p., 28-29). Neither the distribution nor receipt of notice are preconditions to the exercise of any substantive rights under the FLSA. It is a procedural tool intended to streamline the joinder process. The denial of conditional certification and absence of notice does not necessarily prevent potential plaintiffs from attempting to join a collective action on their own accord. *In re JPMorgan Chase*, 916 F.3d at 503, n. 19.

Last, Defendants do not claim that the decision to grant or deny conditional certification ought to be delayed until such time as they have an opportunity to invoke arbitration against potential plaintiffs. Although it is true that Defendants are not in a position to invoke arbitration against individuals with unasserted claims, the timing is still appropriate to decide the certification so long as the paramount rule is observed: "district

courts must respect the existence of arbitration agreements and must decline to notify Arbitration Employees, who waived their right to proceed collectively, of the pending action." *In re JPMorgan Chase*, 916 F.3d at 503, n. 19.

**B.     All putative opt-ins have executed arbitration agreements.**

As explained in Ms. Armstrong's declaration, since 2014, *all* individuals who want to perform at Heartbreakers are given the option of executing either an Employee Agreement or the ICLA, both of which contain identical arbitration agreements. Entertainers are not permitted to perform at Heartbreakers unless they first execute an agreement containing an arbitration agreement. This is a strictly enforced policy.[16] Consequently, all potential plaintiffs in the past three years—as with all named Plaintiffs— have entered into valid and binding arbitration agreements with Heartbreakers.

Plaintiffs have not raised "a genuine dispute as to the existence or validity" of their own arbitration agreements, or the arbitration agreements binding those who they wish to notify. *See In re JPMorgan Chase*, 916 F.3d at 503. "That said, where—as here—an arbitration agreement may prevent potential plaintiffs from participating in the collective action, a district court must ensure at *Lusardi* step one that notice is *not* sent to them." *Miller v. MV Transp., Inc*., 331 F.R.D. 104, 110 (W.D. Tex. 2019) (emphasis added), citing *In re JPMorgan Chase,* 916 F.3d at 501. Conditional certification must be denied.

---

[16]     Armstrong Dec., ¶¶ 5-8

## II.   **Plaintiffs Have Not Met Their Lenient Notice Stage Burden.**

Next, assuming for the sake of argument that the existence of arbitration agreements does not preclude dissemination of notice, Plaintiffs' Motion should still be denied. This is because they have failed to satisfy their 'notice stage' burden.

## A.   **Conditional certification requires more than conclusory allegations.**

A plaintiff's burden at the notice stage is frequently described as 'lenient' and 'modest,' but it is not invisible. At a minimum, courts still require a plaintiff to carry what amount to burdens of pleading and production that resemble the "*Twombly/Iqbal* standard of stating a plausible claim for relief with regard to the putative class members." *See Thomas v. Argos USA, LLC*, H-19-1941, 2019 WL 5213290, at *2 (S.D. Tex. Oct. 16, 2019). Thus, as with the *Twombly/Iqbal* pleading standard, courts do not weigh evidence or make credibility determinations at the notice stage, nor is summary judgment-type evidence required. Nevertheless, to achieve conditional certification, a plaintiff must still present "substantial allegations" supported with *some* competent evidence. *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801-02 (S.D. Tex. 2010) (collecting cases).

This Court has explained in other FLSA cases that the minimal factual showing is comprised of two components: (1) whether there is a reasonable basis for crediting the assertions that aggrieved individuals exist, and (2) whether those aggrieved individuals are "similarly situated" to the plaintiff. *Madrid v. Pine Maintenance, Inc.* 4:19-CV-04336, 2020 WL 2750053, at *3 (S.D. Tex. May 27, 2020) (collecting cases).

Here, Plaintiffs have failed to satisfy the second prong, the enigmatic "similarly situated" standard. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995). A

plaintiff seeking conditional certification does not have to prove that all potential opt-ins are "identically situated," but she must still show that other aggrieved individuals are "similarly situated in relevant respects given the claims and defense asserted." *Freeman v. Progress Residential Prop. Manager, LLC*, 3:16-CV-00356, 2018 WL 1609577, at *4 (S.D. Tex. Apr. 3, 2018), citing *Mooney*, 54 F.3d at 1213. In this regard, the "similarly situated" assessment focuses on the features that make an alleged policy or practice unlawful. The relevant focal points are whether the plaintiff has sufficiently alleged and shown that others have "similar job requirements and similar terms of payment provisions" and "were together the victims of a single decisions, policy or plan." *Id*.

## A.   Plaintiffs fail to describe their job requirements.

The first issue is that Plaintiffs offer no elucidation of what their particular job requirements entailed, which makes it difficult (if not impossible) to evaluate whether potential plaintiffs performed the same basic tasks.[17]

That is not to say common sense-driven inferences should be ignored; most adults have at least some conception of what an "exotic dancer/entertainer" does for a living.

---

[17]   *See Freeman,* 2018 WL 1609577, at *4-5 ("the evidence presented at this early stage suggests that all onsite leasing agents performed the same basic tasks and exercised similar job functions … Plaintiffs' declarations [state] that onsite leasing agents across the nation were charged with leasing properties to prospective tenants in accordance with the same policies and procedures"); *Madrid,* 2020 WL 2750053, at *1 ("As a maintenance worker, Madrid's responsibilities primarily involved manual labor, including maintenance of the golf course's landscape"); *Lawrence v. A-1 Cleaning & Septic Sys., LLC,* 4:19-CV-03526, 2020 WL 2042323, at *1 (S.D. Tex. Apr. 28, 2020) ("Lawrence alleges that drivers and septic repair techs employed by A-1 Cleaning traveled together to customer locations to perform septic cleaning and repair services"); *Tillis v. Glob. Fixture Services Inc*., 4:19-CV-01059, 2020 WL 1443490, at *4 (S.D. Tex. Mar. 23, 2020) ("The members of the proposed class all performed the same basic tasks in "re-setting" stores and all worked roughly the same number of hours in carrying out their job responsibilities").

However, the same could be said of all kinds of occupations. A truck driver drives trucks. A bartender bartends. A salesperson sells goods or services. While one can guess what those occupations involve at a general level, a plaintiff who is seeking to dramatically expand the scope of litigation must provide at least *some* detail about her job in order to gauge whether she and potential opt-ins performed the same basic tasks. This should not be difficult. Describing the parameters of one's job is a matter of accessing memory, not discovery.

Between the allegations in Plaintiffs' complaint, their Motion and attached declarations, a reader learns three things: they were exotic dancers at Heartbreakers who now allege that Defendants should have treated them as "employees" within the meaning of the FLSA, paid them $7.25 an hour and overtime, and that various unnamed individuals affiliated with the Club extracted all manner of fees and fines from their earnings.

Otherwise, the basic tasks of their jobs are clouded in vagueness. For instance, all Plaintiffs state that they had to "participate in the stage rotation dictated by DJs or management." Fair enough, but was participation in a "stage rotation" the only or primary job requirement? If so, were they required to dance on-stage in a particular way? To particular music? In particular attire? Was Ms. Hoffmeister the only entertainer who "was mandated by management and DJ to pay $20 each stage time missed[?]"[18]

What about when they were off-stage? Did they sit around and chat with customers and earn money? Did Plaintiffs perform on the floor area, or in "VIP" areas? Do they claim

---

[18]   Hoffmeister Dec., ¶ 21

that they were required to serve beverages and food in their down time? Why is Ms. Kibodeaux the lone declarant who claims that "Defendants required dancers… including myself to participate in promotions for private events including birthday parties[?]"[19]

Plaintiffs may not be required to present answers to the specific questions posed above, but in order to satisfy the lax "similarly situated" standard, they do need to at least offer some factual enhancement that gives dimension to their basic work duties. Otherwise, "[t]hese vague and generalized statements fail to satisfy even the modest factual showing required of Plaintiffs at this initial stage in the litigation." *McElroy v. Tucker Energy Services, Inc*., SA-18-CV-00010-FB, 2018 WL 5304118, at *3 (W.D. Tex. Oct. 25, 2018).

## B.   "Substantial allegations" of a single decision, policy or plan are missing.

The absence of any articulation relative to job duties bleeds into the next issue: gauging the sufficiency of the "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice" devolves into a guessing game. *Villatoro v. Kim Son Rest., L.P*., 286 F. Supp. 2d 807, 810 (S.D. Tex. 2003) (citation omitted). Requiring speculation as to the parameters of the "factual nexus" that binds plaintiffs to others is not the equivalent of presenting at least "[s]ome factual support for the complaint allegations of class-wide policy or practice [which] must be shown to authorize notice." *Heeg v. Adams Harris, Inc*., 907 F. Supp. 2d 856, 861 (S.D. Tex. 2012).

---

[19]   Kibodeaux Dec., ¶ 22.

Here, Plaintiffs rely almost exclusively on the allegation that the "common policy or practice" was Defendants' alleged misclassification of entertainers as independent contractors. But this amounts to putting the cart of conclusions before the facts that steer horse. If Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), it stands to reason that Section 216(b) ought to require more than a plaintiff "[s]imply alleging violations of the law by the same employer … to justify a collective action." *Harris v. Fee Transp. Services, Inc.,* CIV.A.3:05CV0077-P, 2006 WL 1994586, at *4 (N.D. Tex. May 15, 2006). A lawsuit tied together with little more than the allegation that a plaintiff was "misclassified" under the FLSA might be enough to survive a motion to dismiss, but that does not necessarily mean she is entitled to activate an aggregate proceeding. *See Bramble v. Wal–Mart Stores, Inc*., No. 09–CIV–4932(TNO), 2011 WL 1389510, *4 (E.D.Pa. Apr. 12, 2011) (observing that "the mere classification of a group of employees … as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes").

The flaw here is the gap between the factual allegations (even if they are accepted as true) and the inferential conclusion that Plaintiffs were, as a matter of economic reality, "employees" entitled to be paid minimum wage. "[W]hen considering a motion for conditional certification of a collective action based on allegations of independent contractor misclassification, a court 'must analyze whether the [putative collective action members] are similarly situated with respect to the analysis it would engage in to determine

whether the workers are employees or independent contractors.'" *Andel v. Patterson-UTI Drilling Co., LLC*, 280 F.R.D. 287, 289 (S.D. Tex. 2012) (citation omitted).[20]

No doubt, there are a few specifics offered. For instance, Plaintiffs claim that they had to clock-in, clock-out, and were required to complete an entire shift. The problem is that not all purported impositions of control necessarily point to a systematic regime of wrongful classification. *See Parrish v. Premier Directional Drilling*, L.P., 917 F.3d 369, 382 (5th Cir. 2019) (observing that not all restrictions, *e.g.*, safety training and drug testing, are indicative of employee status); *see also Scantland v. Jeffry Knight, Inc*., 721 F.3d 1308, 1315 (11th Cir. 2013) ("meeting clients' specifications and keeping clients informed of job progress is consistent with the 'usual path' of an independent contractor"). That is particularly true where, as here, Plaintiffs' allegations are bereft of factual context.

A correlated deficiency is that Plaintiffs' own declarations subvert the coherence of their otherwise conclusory allegations. For instance, while all Plaintiffs state that "Defendants dictated to me and all other exotic dancers …. setting [sic] prices that customers would be charged per dance," Ms. Murillo explains that "Defendants controlled the dance prices only when a customer paid with a credit card."[21] Likewise, all Plaintiffs claim that Defendants tracked the number of dances they performed,[22] but Ms. Murillo

---

[20]    To be clear, Defendants do not argue that the Court should apply the economic realities test at this stage, weigh the merits, or decide fact questions for or against the parties. But even if the alleged facts presented in this matter are presumed to be true, the paucity of those facts and lack of surrounding context implicates the equal inference rule: "Logically, if two conclusions are equally likely to be true, one cannot reasonably conclude that one is more likely than the other." *Forbis v. Ignite Rest. Group, Inc*., CV 16-0548, 2017 WL 1336072, at *3 (W.D. La. Apr. 6, 2017).

[21]    Kibodeaux Dec., ¶ 13; Chapman Dec., ¶ 12; Hoffmeister Dec., ¶ 12; Murillo Dec., ¶ 15.

[22]    Kibodeaux Dec., ¶ 9; Chapman Dec., ¶ 12; Murillo Dec., ¶ 14.

states that "Defendants and managers did not track the number of dances I performed when customers paid with cash."[23] As it relates to the alleged mandatory "stage rotation," Ms. Hoffmeister undermines the idea that her own dances were tracked, explaining that "management and DJ would guesstimate about how many stage rotations would be missed…."[24]

Along those same lines, while all Plaintiffs allege that they were subjected to "forced" tipping, Ms. Hoffmeister appears to undermine that narrative, explaining that "[m]anagement *appreciated* all dancers/entertainers to tip out other employees."[25] Without more, it cannot be fairly stated that "appreciated" gratuities necessarily amounts to a mandatory policy or scheme.

On the present record, it is within the realm of possibility that Plaintiffs might be "similarly situated" to other exotic dancers at Heartbreakers, but it cannot be said that they are *plausibly* "similarly situated." *See McElroy,* 2018 WL 5304118, at *3 (finding barebones allegations that plaintiff's job as an oilfield worker involved "manual labor" and that he "maintained and operated the equipment, including pumps, used at the oilfield well sites" inadequate at the notice stage). Conditional certification should be denied.

---

[23]   Murillo Dec., ¶ 10.

[24]   Hoffmeister Dec., ¶ 22.

[25]   *Id.*, ¶17 (emphasis added).

**III.    Plaintiffs' Notice and Consent to Join Forms Are Defective.**

Assuming for the sake of argument that conditional certification is somehow warranted, there are numerous deficiencies in the proposed Notice and Consent to Join forms.

**A.    The proposed Notice forms are inaccurate and omit material information.**

First, it must be noted that Plaintiffs do not present a specific class definition in their Motion. Regardless, for present purposes, it is assumed that Plaintiffs wish to send notice to "anyone who has worked as a dancer at Heartbreakers in the last three years" as stated in their proposed Notice.

1.    <u>Description of claims</u>

The Notice form states only that Plaintiffs allege that Defendants "have not paid dancers an hourly wage" but otherwise fails to whether Plaintiffs are pursuing minimum wages, overtime, and/or other damages. Plaintiffs should clarify this issue in a revised proposed Notice if one is required.

2.    <u>Arbitration & the "right to opt-in"</u>

As discussed above, the Fifth Circuit explained in *JPMorgan* that potential plaintiffs who have executed binding arbitration agreements do not have an absolute right to bring their claims in a court. Nevertheless, the Notice form inaccurately states in the header that recipients have a "right to opt-in to claims…." Along those same lines, the Notice incorrectly states on page 1 that Defendants "…recognize their dancers' right to pursue these claims in court."

15

Once more, individuals may have a substantive right to assert claims under the FLSA, but that is not the same as an absolute right to assert claims in a particular forum. Accordingly, the Notice form should be amended to inform potential plaintiffs that if they do attempt to join, Defendants reserve the right to compel arbitration of their claims.

3.   Class period

The Notice form vaguely states that "[t]his case has been brought on behalf of anyone who has worked as a dancer at Heartbreakers in the last three years." This does not adequately inform potential plaintiffs of the applicable statute of limitations, which "is not tolled with respect to other potential plaintiffs unless and until they opt-in to the case." *Quintanilla v. A & R Demolitina, Inc*., 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005). The relevant class period should be limited to those who performed at the Club for up to three years before the Court approves notice. 29 U.S.C. § 255(a); *see Tolentino v. C & J Spec-Rent Services Inc.,* 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010).

4.   Identity of representatives

Although there are now multiple named Plaintiffs, the Notice and Consent to Join forms use "plaintiff" in the singular throughout and without naming them. Potential plaintiffs should know who purports to make decisions on their behalf if they decide to attempt joinder.

Additionally, neither form explains that the named Plaintiffs are also represented by the law firm of Kristensen, LLP, who Defendants can only assume would also be responsible for representing new parties. Recipients should also be told how Plaintiffs'

counsel is being paid. *See Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 524 (N.D. Tex. 2014).

 5. <u>Choice of counsel</u>

 The Notice and Consent to Join forms should inform potential plaintiffs that they may contact an attorney of their choosing to discuss the case and that they do not have to allow Plaintiffs' counsel to represent their interests. *Yaklin v. W-H Energy Services, Inc*., CIV.A. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008) (noting that "the notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case"); *Reyes v. Quality Logging, Inc*., 52 F. Supp. 3d 849, 853 (S.D. Tex. 2014).

 6. <u>Returning the Consent to Join form</u>

 The Notice and Consent to Join forms explain to potential plaintiffs that that they should return their consent to join forms to Plaintiffs' counsel. This is but one option. "[C]lass members who wish to opt-in [may also] return their opt-in forms directly to the Court, not to counsel for Plaintiff." *Tolentino*, 716 F. Supp. 2d at 655.

 7. <u>Effect of joinder</u>

 Next, the Notice form states that "You may also be asked to be a witness or to provide evidence in the case, although not all employees who submit a consent form will be required to do so." This language is misleading because the status of potential plaintiffs as "employees" has not been decided in this matter. It should be modified to refer to "opt-ins [or individuals] who submit a consent form…."

17

Second, potential plaintiffs should be advised that if they do return a consent form, they will become a party to the case and are therefore potentially subject to discovery, including depositions. There is no *in terrorem* effect in providing this information to potential plaintiffs; it is a pragmatic truth of litigation that potential parties ought to know about in advance of deciding whether to join a lawsuit. *Senegal v. Fairfield Indus., Inc*., CV H-16-2113, 2017 WL 1134153, at *8 (S.D. Tex. Mar. 27, 2017) ("[I]it is appropriate that potential class members be advised that they may have to participate in written and oral discovery, or testify at trial").

The Notice form states that "[i]f you do participate in the case, you will be bound by any ruling entered by the court or settlement reached by the parties." For the sake of clarity, potential plaintiffs should be advised that they will be bound "by the Court's judgment, whether favorable *or* unfavorable."

With respect to the possibility of settlement, "the Notice should not inform the potential class definitively that they will 'share in' any settlement reached in the case because" the claims of some potential plaintiffs may be time-barred or precluded on other grounds. *Moran v. Ceiling Fans Direct, Inc*., CIVA H-06-0813, 2006 WL 2868939, at *2 (S.D. Tex. Oct. 5, 2006).

## B.   Defendant-sponsored virtual and physical postings are unwarranted.

Plaintiffs ask the Court to order Defendants to post their Notice form "in a public location near the public entrance of Heartbreakers as well as in the dressing rooms (at least 3 by 5 feet, in bright colors ….)," and "on the Heartbreakers website, including the Heartbreakers Instagram and Facebook pages." These demands are patently unreasonable.

18

The FLSA's remedial goals may be broad, but they should not require a defendant to use its own property and channels of speech to broadcast that it has been sued and that all are free to join-in without a compelling reason.

Indeed, Plaintiffs' demand that the Court order Defendants to comply with these requests implicates First Amendment concerns. The Supreme Court has "held time and again that freedom of speech 'includes both the right to speak freely and the right to refrain from speaking at all.'" *Janus v. Am. Fed'n of State, County, & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2463 (2018), quoting *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). The right against compelled speech is not restricted to ideological messages. Compelled statements of fact, like compelled statements of opinion, are subject to First Amendment scrutiny. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc*., 547 U.S. 47, 63 (2006) (collecting cases). Moreover, the Supreme Court has "limited the government's ability to force one speaker to host or accommodate another speaker's message." *Id*.

There is no cognizable or substantial governmental interest in requiring Defendants to advertise the existence of Plaintiffs' cause. To the extent that the "broad remedial goals" of the FLSA are in play, they are served by Plaintiffs' request to mail notice directly to potential plaintiffs on their own dime, a conduit that is far more proportional to and better suited for the advancement of that interest. *See Central Hudson Gas and Electric Corp. v. Public Service Comm*., 447 U.S. 557, 564 (1980). Indeed, requiring Defendants to host notice—particularly on its premises—simply invites potential plaintiffs to take their questions and concerns about the lawsuit directly to management, a circumstance that is fraught with risk during the notice period.

19

**C.     The production and scope of the class list must be modified.**

Next, Plaintiffs ask the Court to order Defendants to produce "produce a list of the dancers to Plaintiffs' counsel, within ten (10) days of an Order, who have worked at Heartbreakers, including their names and last-known mailing addresses, telephone numbers, email addresses, work locations, copies of driver's license (this is common to prove age) and dates they have worked at Heartbreakers."

First, given the ongoing effects of the coronavirus pandemic on Heartbreakers' staffing, more than 10 days would be necessary to compile, sort, and scan all of this information, all of which exists in hard-copy format. Defendants would require at least 30 days to undertake the process of gathering the information necessary to generate and produce a class list containing the names and last known mailing addresses for the many exotic dancers who have performed at Heartbreakers since 2017.

Second, Defendants simply cannot provide some of the information sought. For one, Defendants do not request or maintain email addresses of entertainers in their records. As for "work locations" it is not clear what this means. Assuming that this is recycled language from some other motion involving a defendant with multiple locations, it is inapplicable to Heartbreakers, which only has a single location in Dickinson, Texas.

Last, Plaintiffs are not entitled to copies of drivers' licenses. Not only is it duplicative of the information requested in the class list, it implicates the privacy interests of potential plaintiffs. One of the reasons why exotic dancers perform under stage names is to protect their identities and information; to freely disseminate their photographs,

20

contact information, and other information contained on drivers' licenses amounts to a gratuitous disclosure that serves no legitimate purpose.

## IV.  Existing communications directed to potential plaintiffs must be monitored.

Finally, it must be noted that over the past six months, Plaintiffs' counsel have maintained a "Dancer Rights" website, along with a social media campaign on Facebook, and to a lesser extent, on Instagram.[26] The majority of the postings on their Facebook page focus on the numerous adult cabarets who they have recently sued for alleged FLSA violations, invitations to join these lawsuits, and exhortations that wads of cash may be available because "Dancers Rights Results = Cash Justice!"[27] As it relates Heartbreakers, there have been postings on Facebook that state the following:



---

[26]    *See*    Dancer    Rights,    https://www.facebook.com/stopdancerswagetheft/; https://www.dancersrights.com/; https://www.instagram.com/thedancersrights/

[27]    **Exhibit H**, Screenshots of "Dancer Rights" Facebook and Instagram pages.

Defendants do not question the basic tenet that Plaintiffs' counsel have a protected right to communicate with the public and potential plaintiffs regarding their services. *See Bates v. Arizona State Bar*, 433 U.S. 350 (1977). That right is not entirely unfettered, particularly in the context of a class or collective action. "[B]ecause of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, 'a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" *Belt v. Emcare, Inc*., 299 F. Supp. 2d 664, 667 (E.D. Tex. 2003), quoting *Gulf Oil Company v. Bernard*, 452 U.S. 89, 100 (1981).

To that end, if the Court decides to authorize notice, Defendants ask that class communications bearing a judicial seal of approval be tailored to account for this advertising campaign and the messaging that has already been widely spread.

At an absolute minimum, clarifying language is required in any class notice. As seen above, the statement that a "Federal Judge Brown" has made a legal finding is potentially misleading. Plaintiffs should be required to state in their Notice that neither "Federal Judge Brown" nor *any* federal judge has made an adverse finding against Defendants.

Second, many individuals have posted on the Dancers Rights Facebook page to express their distrust of lawyers, litigation, and disagreement with the aims of the exotic dancer wage-and-hour litigation cottage industry.[28]  On several occasions in the past, it

---

[28]     Notwithstanding the non-waivable nature of the FLSA's protections, it is not altogether uncommon to find exotic dancers who actually prefer to retain advantages of independent contractor classification in various situations. *See, e.g., Reich v. ABC/York-Estes Corp*., 64 F.3d 316, 323 (7th

appears that the Facebook page's administrator has responded to those dissenting voices with accusations that they are doing the bidding of clubs, ignorant, or engaging in libelous speech.

At the risk of belaboring the point, when it comes to aggregate litigation, counsel for both the plaintiffs and the defendants have heightened responsibilities when it comes to interacting with potential class members. If defendants may not discourage the exercise of worker's legal rights and participation in litigation, it should also be the case that plaintiffs should be held to the same standard when it comes to encounters with those who disagree with their litigation objectives. After all, no litigant has a monopoly on the truth.

Bearing this in mind, Defendants ask that any notice form distributed in this matter contain language explaining that they may also contact Defendants' counsel directly if they so desire. Once more, not all exotic dancers are required to agree with Plaintiffs' allegations or remain beholden to the narrative that they lack agency and must therefore be categorically treated as "employees" under federal law in pursuit of "cash justice."

---

Cir. 1995) (finding district court erred in preventing exotic dancers from intervening in misclassification case to advance their interest in remaining classified as independent contractors); Declaratory Judgment, *Paulita Coronado, et al., v. D.N.W. Houston, Inc., et al*., Case No. 4:13-cv-02179, Southern District of Texas, Houston Division [Dkt. No. 196] (granting intervenor exotic dancers' request to be declared independent contractors); *Byrne v. Santa Barbara Hosp. Services, Inc*., 2018 WL 10483678, at *15 (C.D. Cal. Dec. 14, 2018) (granting intervenor exotic dancers' request to be declared non-employee LLC members); Laura Waxman, *New rules for contractors have unexpected consequences for The City's strip clubs*, Jan. 2, 2019, San Francisco Examiner, https://www.sfexaminer.com/news/new-rules-for-contractors-have-unexpected-consequences-for-the-citys-strip-clubs/ (last accessed June 11, 2020).

<u>**CONCLUSION**</u>

For these reasons, Defendants A&D Interests, Inc., d/b/a Heartbreakers Gentleman's Club, Mike Armstrong, and Peggy Armstrong ask the Court to deny Plaintiffs' Motion for Issuance of Notice in its entirety, and for all other relief to which they may be justly entitled.

Respectfully submitted,

WALLACE & ALLEN, LLP

*/s/ William X. King*
Casey T. Wallace
State Bar No. 00795827
William X. King
State Bar No. 24072496
440 Louisiana St., Suite 1500
Houston, Texas 77002
Tel: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
wking@wallaceallen.com
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure via email and/or filing through the Court's ECF System on June 11, 2020.

Jarrett L. Ellzey
W. Craft Hughes
Leigh Montgomery
HUGHES ELLZEY, LLP
1105 Milford Street
Houston, Texas 77066
Tel: (713) 554-2377
Fax: (888) 995-3335
jarrett@hughesellzey.com
leigh@hughesellzey.com

Jesenia A. Martinez
KRISTENSEN, LLP
12540 Beatrice Street
Suite 200
Los Angeles, California 90066
Tel: (310) 507-7924
Fax: (310) 507-7906
jesenia@kristensenlaw.com
**ATTORNEYS FOR PLAINTIFFS**

*/s/ William X. King*
William X. King