United States District Court
Southern District of Texas
**ENTERED**
October 27, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| STACEY KIBODEAUX, ET AL., § § Plaintiffs. § § VS. § A&D INTERESTS, INC. D/B/A § HEARBREAKERS GENTLEMAN'S § CLUB, ET AL., § § Defendants. § | CIVIL ACTION NO. 3:20-CV-00008 |

## MEMORANDUM OPINION AND ORDER

Pending before me is Plaintiff's Motion for Issuance of Notice Pursuant to §216(b) of the Fair Labor Standards Act. *See* Dkt. 34. After carefully reviewing the motion, the excellent briefing supplied by both parties, and the relevant case law, I **GRANT** the motion and authorize class notice.

## BACKGROUND

Plaintiff Stacey Kibodeaux ("Kibodeaux") is a former exotic dancer who worked at A&D Interests, Inc. d/b/a Heartbreakers Gentleman's Club ("Heartbreakers") in Dickinson, Texas. Kibodeaux originally filed this lawsuit under the Fair Labor Standards Act ("FLSA") to recover wages unlawfully withheld as a result of Heartbreakers' alleged practice of misclassifying her and other dancers as independent contractors.

Shortly after filing, three other former dancers who worked at Heartbreakers consented to join the lawsuit. The three individuals are Hailey Chapman, Jean Hoffmeister, and Roxanne Murillo. In the First Amended Complaint, Plaintiffs added Mike A.

Armstrong and Peggy A. Armstrong, the owners of Heartbreakers, as Defendants. Against all Defendants, Plaintiffs assert three causes of action under the FLSA for the deprivation of income and two causes of action for the violation of related tipping regulations.

For the FLSA claims, Kibodeaux now seeks permission for this lawsuit to proceed as a collective action on behalf of all dancers who have performed at Heartbreakers in the past three years. To support the request for conditional certification, Kibodeaux and her co-plaintiffs have submitted detailed declarations.

In those declarations, Plaintiffs allege that Heartbreakers dictated how they—and all other exotic dancers at the club—"performed their work, including tracking the number of dances, setting prices that customers would be charged per dance, . . . and controlling when and how dancers performed." Dkt. 34-1 at 6, 12, 17, and 23. According to Plaintiffs, Heartbreakers charged all dancers a "House Fee" of between $30 to $100 for the ability to work a particular shift. Heartbreakers reportedly also required the dancers to tip disc jockeys and bartenders between $20 to $100 per shift. Plaintiffs further allege that Heartbreakers did not pay dancers hourly wages, but instead allowed the dancers to retain a portion of the dance fees and tips they earned from their customers. Plaintiffs maintain that they worked approximately five shifts a week, with each shift lasting roughly eight hours, although Plaintiffs allege that they were required to stay past the end of their shift.

The thrust of Plaintiffs' lawsuit is that Heartbreakers misclassified all the dancers as independent contractors when they should have been considered hourly employees. In their declarations, the Plaintiffs each assert that "Defendants engaged in the common practice of treating me and all other exotic dancer/entertainers at Heartbreakers as

independent contractors, depriving us hourly wages, overtime wages, and forced tipping."

*Id.*

## THE LAW OF CONDITIONAL CERTIFICATION

The FLSA established minimum wage, overtime pay, and recordkeeping standards that affect employees in the private and public sectors. When it comes to enforcing the statute's provisions, the FLSA provides that:

> An action . . . may be maintained . . . by any one or more employees for and [on] behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he [or she] gives his [or her] consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). The FLSA collective action mechanism allows for efficient adjudication of similar claims so that "similarly situated" employees, whose claims are often small, may join together to pursue their claims for relief. *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

Unlike a typical class action lawsuit under Federal Rule of Civil Procedure 23, where an unwilling plaintiff must "opt out" of the class, the FLSA requires an employee or former employee wishing to become a party to the action to "opt in" by giving written consent to become a party to the collective action. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995). "The remedial nature of the FLSA . . . militates strongly in favor of allowing cases to proceed collectively." *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009) (cleaned up).

Although Congress, the Supreme Court, and the Fifth Circuit have not addressed the appropriate legal standard for determining the propriety of conditional certification

under the FLSA, most district courts in the Fifth Circuit follow the two-step approach set forth in *Lusardi v. Xerox, Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See Portillo v. Permanent Workers, L.L.C.*, 662 F. App'x 277, 279–80 (5th Cir. 2016). Important here, I regularly apply the *Lusardi* framework for determining whether conditional certification is appropriate. *See Freeman v. Progress Residential Prop. Manager, LLC*, No. 3:16-CV-00356, 2018 WL 1609577, at *2 (S.D. Tex. Apr. 3, 2018).

The Fifth Circuit recently summarized how the first-step of the popular *Lusardi* approach operates:

> Under *Lusardi*, stage one begins when the plaintiff moves for conditional certification of the collective action. The district court then considers whether, based on the pleadings and affidavits of the parties, the putative collective members are "similarly situated" and may thus proceed collectively. If they are, the court conditionally certifies the collective action.
>
> . . . .
>
> The standard for satisfying step one is fairly lenient. Most discovery happens after the first stage, so the district court, based on minimal evidence, makes the initial determination whether the putative collective members are sufficiently similarly situated to the named plaintiff to proceed collectively.

*In re JPMorgan Chase & Co.*, 916 F.3d 494, 500–01 (5th Cir. 2019) (cleaned up). The decision on whether to conditionally certify a class under the FLSA is left to the sound discretion of the district court. *See Hoffmann-La Roche, Inc.*, 493 U.S. at 171.

Once a district court conditionally certifies a collective action, "notice of the action should be given to potential class members," allowing them the opportunity to opt-in to the collective action. *Mooney*, 54 F.3d at 1214. "The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn

become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (citation omitted).

The second step of the *Lusardi* approach—the decertification stage—is triggered if a defendant files a motion for decertification after the opt-in period has concluded and discovery is largely complete. *See Mooney*, 54 F.3d at 1214. The Fifth Circuit has explained:

> At [the decertification] stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e., the original plaintiffs—proceed to trial on their individual claims.

*Id.*

## THE ARBITRATION ISSUE

Before delving into the standard conditional certification analysis, I need to address the elephant in the room: arbitration. Each of the four Plaintiffs signed an independent contractor/license agreement containing an arbitration provision. The arbitration provision states, in pertinent part, as follows:

> [HEARTBREAKERS] AND [THE DANCER] AGREE THAT FOR MANY REASONS, LAWSUITS AND COURT ACTIONS ARE DISADVANTAGEOUS TO BOTH. THEREFORE THEY AGREE THAT ANY CONTROVERSY OR CLAIM ARISING OUT OF OR RELATING TO THIS CONTRACT OR RELATIONSHIP BETWEEN THE PARTIES, INCLUDING ANY DISPUTE RELATED TO ALLEGATIONS OF VIOLATIONS ARISING UNDER ANY STATE OR FEDERAL STATUTES, INCLUDING AN[Y] CLAIMS RELATED TO DISCRIMINATION, OVERTIME OR WAGE LAWS . . . SHALL BE RESOLVED BY ARBITRATION. ANY ARBITRATION SHALL BE ADMINISTERED BY THE AMERICAN ARBITRATION

> ASSOCIATION UNDER ITS RULES FOR ARBITRATION . . . INCLUDING IN ITS DISCRETION THE RULES RELATING TO EMPLOYMENT DISPUTES . . . . THE ONLY PARTIES TO THE ARBITRATION SHALL BE [HEARTBREAKERS] AND [THE INDIVIDUAL DANCER]. THE PARTIES AGREE THAT ANY DISPUTE BETWEEN THEM SHALL NOT BE THE SUBJECT OF A CLASS ACTION LAWSUIT OR ARBITRATION PROCEEDING.

Dkt 37-5 at 5, 37-6 at 5, 37-7 at 5, 37-8 at 5. To date, Heartbreakers has *not* moved to compel arbitration of the FLSA claims brought by the four Plaintiffs.

The four named Plaintiffs are apparently not the only dancers who have agreed to arbitrate their overtime or wage claims with Heartbreakers. Heartbreakers has submitted evidence that *all* the putative class members are required to enter into valid and binding arbitration agreements before working at the club.

Relying on the Fifth Circuit's recent decision in *In re JPMorgan Chase & Co.*, Heartbreakers argues that the agreements to arbitrate should prevent this court from authorizing notice to the putative class members. The issue in *In re JPMorgan Chase & Co.* was whether a district court may give written notice of a pending FLSA collective action to individuals who signed binding arbitration agreements. *See* 916 F.3d at 501. Although several district courts across the country had previously addressed the issue, the Fifth Circuit became the first appellate court to do so. *In re JPMorgan Chase & Co.* involved a putative FLSA collective action case involving approximately 42,000 current and former Chase employees. *See id.* at 497. Roughly 35,000 of those individuals signed arbitration agreements waiving their right to proceed collectively against Chase. *See id.* In an opinion written by Judge Jerry Smith, the Fifth Circuit held that "district courts may not send notice to an employee with a valid arbitration agreement unless the record shows

that nothing in the agreement would prohibit that employee from participating in the collective action." *Id.* at 501.

In Plaintiffs' view, it is the last part of this directive—"unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective action"—that is critical. *Id.* Rather than establishing an absolute prohibition against sending notice to any putative class member with a valid arbitration agreement, Plaintiffs argue that the Fifth Circuit's holding expressly acknowledges that a potential plaintiff with a valid arbitration agreement may receive notice "unless the record shows that [something] in the agreement would prohibit that employee from participating in the collective action." *Id.*

I concur with Plaintiffs. Had the Fifth Circuit meant to simply say that notice may not be sent to an individual with a valid arbitration agreement, it could have easily done so. Instead, it carefully explained that there are limited situations in which a putative class member who signed an arbitration agreement may receive notice of a collective action. *See id.* The Fifth Circuit reaffirmed this principle a few months ago, putting to rest any notion that the language in *In re JPMorgan Chase & Co.* was a mistake. *See In re Spiros Partners, Ltd.*, 816 F. App'x 985, 987 (5th Cir. 2020) (quoting *In re JPMorgan Chase & Co.*, 916 F.3d at 501) ("Nevertheless, notice to a putative class member is permitted if 'nothing in the [arbitration] agreement would prohibit that employee from participating in the collective action.'"). The reasoning is sound. Notice should only be sent to those "persons who will be eligible to participate in the pending suit." *In re JPMorgan Chase & Co.*, 916 F.3d at 502. If someone is contractually prohibited from proceeding in a collective action,

they cannot participate in a federal court collective action lawsuit and should not receive notice.

The arbitration provision at issue in this case includes the following sentence: "THE PARTIES AGREE THAT ANY DISPUTE BETWEEN THEM SHALL NOT BE THE SUBJECT OF A CLASS ACTION LAWSUIT OR ARBITRATION PROCEEDING." Dkt 37-5 at 5, 37-6 at 5, 37-7 at 5, 37-8 at 5.[1] Notably, this sentence says nothing about the ability of a group of plaintiffs to pursue a collective action. And make no mistake, a class action lawsuit brought under Rule 23 is "fundamentally different" from a FLSA collective action. *Genesis Healthcare Corp.*, 569 U.S. at 74. *See also Chapman v. Lehman Bros., Inc.*, 279 F. Supp. 2d 1286, 1288 (S.D. Fla. 2003) (holding that a general class action waiver in the parties' arbitration agreement did not waive the employees' right to arbitrate an FLSA collective action against defendant). As already noted, FLSA collective actions are "opt-in" actions while Rule 23 class actions are generally "opt-out" actions. And plaintiffs in a collective action need not satisfy the other requirements—numerosity, commonality, typicality and adequacy of representation—to bring a class action under Rule 23. The agreement at issue here also incorporates the American Arbitration Association

---

[1] In contrast, the arbitration agreement in *In re JPMorgan Chase & Co* provided:

> Covered Parties expressly waive any right with respect to any Covered Claims to submit, initiate, or participate in a representative capacity or as a plaintiff, claimant or member in a class action, collective action, or other representative or joint action, regardless of whether the action is filed in arbitration or in court.

Dkt. 54-22 at 92, *Rivenbark v. JPMorgan Chase & Co.*, No. 4:17-cv-3786 (S.D. Tex. June 8, 2018).

Employment Arbitration Rules, which affirmatively distinguishes between class and collective actions. *See Int'l Bancshares Corp. v. Lopez*, 57 F. Supp. 3d 784, 791 (S.D. Tex. 2014) (upholding arbitration award permitting collective action in arbitration of FLSA claims, where arbitrator determined that agreement "explicitly barred only class actions, not collective actions," and American Arbitration Association rules incorporated into agreement distinguished between the two types of actions). In short, I find nothing in the independent contractor/license agreement that indicates that the signatories agreed to waive their right to proceed collectively.[2] *See Szilassy v. Ameriprise Fin. Servs., Inc.*, No. CV 07-80559-CIV, 2007 WL 9677242, at *2 (S.D. Fla. Aug. 2, 2007) ("Based upon these differences, I do not read the [agreement's] prohibition on the arbitration of class actions to include collective actions brought pursuant to section 16(b) of the FLSA.").

Granted, it is going to be the rare case in which a district court issues notice to a group of plaintiffs who have executed agreements calling for arbitration. But this is one of those atypical cases. Although the Plaintiffs have executed arbitration agreements, Defendants have not moved to compel arbitration. That is their choice. The parties can certainly waive or renounce their right to insist upon arbitration. *See Eman-Henshaw v. Park Plaza Hosp.*, 129 F. 3d 610, 1997 WL 681184, at *2 (5th Cir. 1997) (initial refusal to engage in arbitration can waive the right to compel arbitration). Because (i) the Defendants

---

[2] True, the arbitration clause does provide that "THE ONLY PARTIES TO THE ARBITRATION SHALL BE [HEARTBREAKERS] AND [THE INDIVIDUAL DANCER]." Dkt 37-5 at 5, 37-6 at 5, 37-7 at 5, 37-8 at 5. But that only covers what happens in the event an arbitration takes place. Nothing in the agreements suggests that the dancers have waived their right to proceed collectively in the event the case proceeds in our court system.

have failed to seek arbitration; and (ii) the underlying agreements do not prevent employees from participating in collective actions, the Plaintiffs can, at least for the time being, continue to proceed with this case in federal court. Accordingly, if Plaintiffs meet the requirements to conditionally certify this case, notice should issue to putative class members.

## CONDITIONAL CERTIFICATION IS APPROPRIATE

To determine whether conditional certification is appropriate at the first *Lusardi* stage, a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; and (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted. *See Freeman*, 2018 WL 1609577, at *2.

**A.    There is a Reasonable Basis to Believe That Other Aggrieved Individuals Exist.**

Under this first element, Plaintiffs "need only show that it is reasonable to believe that there are other aggrieved [individuals] who were subject to an allegedly unlawful policy or plan." *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012). In this case, Heartbreakers does not dispute that Plaintiffs meet this relatively low bar. Plaintiffs have submitted four separate declarations, each of which is sufficient to show that there is a reasonable basis to believe that other aggrieved individuals exist. The declarations describe the job conditions at Heartbreakers and aver that all dancers were treated the same and misclassified as independent contractors. The first element of the *Lusardi* test is easily satisfied.

**B.     There is a Reasonable Basis to Believe That a Class of Similarly Situated Persons Exist.**

To meet the second prong of the *Lusardi* test, a plaintiff must demonstrate a reasonable basis for believing that a class of "similarly situated" persons exist. *See Heeg*, 907 F. Supp. 2d at 862. Although the FLSA does not define "similarly situated," and the Fifth Circuit has carefully avoided jumping into these waters, district courts in the Southern District of Texas have provided plenty of guidance.

"For the class representative to be considered similarly situated to the potential opt in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 468 (S.D. Tex. 2012) (internal quotation marks and citation omitted). In making this assessment, "the court need not find uniformity in each and every aspect of employment to determine that a class of employees is similarly situated." *Tolentino v. C&J Spec-Rent Servs., Inc.*, 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (cleaned up). Instead, "[p]laintiffs must demonstrate that they and those they seek to include in the collective action are similarly situated *in relevant respects given the claims and defenses asserted*." *White v. KSW Oilfield Rental, LLC*, No. H-18-1983, 2018 WL 6019178, at *2 (S.D. Tex. Nov. 16, 2018).

Defendants argue that Plaintiffs fail to satisfy the "similarly situated" standard because they have failed to provide any detail on the particular job requirement of an exotic dancer, making "it difficult (if not impossible) to evaluate whether potential plaintiffs performed the same basic tasks." Dkt. 37 at 14. This argument is a real stretch.

Admittedly, the declarations submitted by Plaintiffs do not provide a great deal of information about the job duties and responsibilities of an exotic dancer at Heartbreakers. Still, I see no reason to abandon common sense at the door. As the old saying goes, "I might have been born at night, but I was not born last night." To state the painfully obvious, there are some occupations for which all of us in society have a basic understanding. For example, we generally know off the top of our head what a fireman, chef, bartender, and cashier do on daily basis  Likewise, I am fairly confident that most adults over the age of 18 (and many minors) can safely describe the role of an exotic dancer at a sexually-oriented business, even if they have never been inside such a business. To the extent I had any reservations about whether all dancers at Heartbreakers performed the same basic tasks (which I don't), the evidence submitted by Heartbreakers in opposition to conditional certification removes any doubts. The declaration of Heartbreakers' co-owner, Peggy A. Armstrong, states that all entertainers at the club are required to sign either an independent contractor agreement or an employment agreement, both of which describe the job responsibilities of a dancer at Heartbreakers. The fact that all dancers at Heartbreakers sign the same agreements indicates to me that all members of the putative class are expected to perform the same basic tasks.

Even if the dancers at Heartbreakers had slightly different job responsibilities, it would still be well within my discretionary authority to grant conditional certification in this case because any "differences between class members are not material to the allegations in the case." *Tamez v. BHP Billiton Petroleum (Americas), Inc.*, No. 5:15-CV-330-RP, 2015 WL 7075971, at *4 (W.D. Tex. Oct. 5, 2015). At this stage, I must accept

as true Plaintiffs' allegation, supported by their declarations, that there was a single, decision, policy, or plan to misclassify dancers as independent contractors. "Because potential class members were paid in the same manner, and because their job duties were not different in ways that are legally relevant to their FLSA claim, the Court finds that the potential class members are similarly situated for purposes of conditional certification." *Kibodeaux v. Wood Grp. Prod.*, No. 4:16-CV-3277, 2017 WL 1956738, at *2 (S.D. Tex. May 11, 2007) (footnote omitted).

Given the relatively light burden imposed on a plaintiff at the notice stage, numerous district courts have granted conditional certification based on a simple showing that workers may have been misclassified as independent contractors. *See Freeman*, 2018 WL 1609577, at *2 (holding that misclassification cases are particularly appropriate for conditional certification); *Walker*, 870 F. Supp. 2d at 470 (same). Moreover, courts across the nation routinely grant conditional certification and authorize the issuance of notice when exotic dancers are allegedly misclassified as independent contractors. *See, e.g.*, *Nelson v. Tex. Sugars, Inc.*, No. H-17-2171, 2018 WL 2985892, at *3 (S.D. Tex. May 4, 2018); *DeGidio v. Crazy Horse Saloon & Rest., Inc.*, No. 4:13-cv-2136-BHH, 2017 WL 5624310, at *15 (D.S.C. Jan. 26, 2017); *Stevenson v. Great Am. Dream*, No. 1:12-cv-3359-TWT, 2013 WL 4217128, at *2 (N.D. Ga. Aug. 14, 2013). This case is no different. I find that Plaintiffs have met their fairly lenient burden at the notice stage by demonstrating a reasonable basis that there are other similarly situated class members.

**NOTICE**

I now turn to the appropriate notice procedure. "To keep the opt-in process efficient, district courts have discretion to facilitate notice to potential plaintiffs." *In re JPMorgan Chase & Co.*, 916 F.3d at 500 (cleaned up). "Notice is particularly important for FLSA collective actions as potential plaintiffs' statutes of limitations continue to run unless and until a plaintiff 'gives his consent in writing to become a party and such consent is filed in the court in which such action is brought.'" *Gronefeld v Integrated Prod. Servs., Inc.*, No. 5:16-CV-55, 2016 WL 8673851, at *5 (W.D. Tex. Apr. 26, 2016) (quoting 29 U.S.C. § 216(b)).

Defendants have raised a number of objections to the wording of the proposed notice submitted by Plaintiffs. At the outset, let me say that I fully expect the parties to get together—by phone or video—to iron out the notice that will be sent to potential class members. To assist the parties in crafting such a notice, I have prepared a form FLSA conditional certification Notice and Consent to Join. These forms are readily available on my website (https://www.txs.uscourts.gov/page/united-states-magistrate-judge-andrew-m-edison). The parties are highly encouraged to utilize my Notice and Consent to Join forms in preparing the ultimate documents that will be distributed to potential plaintiffs, especially since those forms address many of the wording disputes at issue here.

There is one outstanding notice issue I do want to address. Plaintiffs ask as me to order Defendants to post notice of this lawsuit "in a public location near the public entrance of Heartbreakers as well as in the dressing rooms (at least 3 by 5 feet, in bright colors[)],"

and "on the Heartbreakers website, including the Heartbreakers Instagram and Facebook pages." Dkt. 34 at 31. Earlier this year, I addressed this very issue in another FLSA case:

> Next, [Plaintiffs] request[] that I order Defendants to post notice in the workplace where it can be seen by current employees. . . . I have no qualms with ordering Defendants to post notice. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011) (collecting cases). "Posting notice in the workplace maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in." *Mendoza v. Ashiya Sushi 5, Inc.*, No. 12 Civ. 8629, 2013 WL 5211839, at *9 (S.D.N.Y. Sep. 16, 2013). Moreover, it is relatively easy for the employer to tape up a notice for all to see in a common area, and there is little, if any, downside in posting such notice. *See Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) (rejecting as "unpersuasive" defendant's argument that posting notice "will be unnecessarily disruptive and will start a conversation among employees" and noting that "[a] purpose of notice *is* to start a conversation among employees, so as to ensure that they are notified about potential violations of the FLSA and meaningfully able to vindicate their statutory rights"). Accordingly, I grant [Plaintiffs'] request that Defendants post notice in a conspicuous common area at [Heartbreakers].

*Lawrence v. A-1 Cleaning & Septic Sys., LLC*, No. 4:19-CV-03526, 2020 WL 2042323, at *6 (S.D. Tex. Apr. 28, 2020). Although I think it is reasonable to post court-ordered notice of the lawsuit in common employee spaces like a coffee bar, dressing room, or break area, I see no useful purpose in ordering Heartbreakers to post notice near its public entrance or on the company's social media sites. The purpose of class notice is not to notify Heartbreakers' clientele of the lawsuit, but rather to make sure that potential class members can make an educated decision on whether to opt-in. Finally, I find Plaintiffs' request that notice be "at least 3 by 5 feet, in bright colors" a tad overzealous. Dkt. 34 at 31. In my

humble opinion, an 8.5 by 11-inch sign (standard notebook size) reasonably represents the upper limit for notice posted in a common employee space.

## CONCLUSION

Kibodeaux has made a sufficient showing at this preliminary stage to warrant the issuance of notice, to permit full discovery, and to allow the Court to conduct a more rigorous analysis at the final decertification stage when it has the benefit of more information. As such, Plaintiff's Motion for Issuance of Notice Pursuant to §216(b) of the Fair Labor Standards Act (Dkt. 34) is **GRANTED**. Conditional certification is granted for a class defined as follows:

> Anyone who has worked as a dancer at Heartbreakers during the three-year period before this order, October 27, 2017 through October 27, 2020.

I order the parties to confer and file an agreed Proposed Notice and an agreed Proposed Consent to Join form by November 6, 2020. Defendants shall also provide Plaintiffs with a list of all individuals fitting the description of the conditionally certified class in a usable electronic format by November 6, 2020. This list shall include each individual's full name, last known mailing address, email address, telephone number, and date(s) working as a dancer at Heartbreakers.

Plaintiffs shall have fourteen (14) days from the receipt of the necessary contact information to send notice to the potential class members by first-class mail, email, and text message. The opt-in period shall be sixty (60) days from the date the notice is sent. A reminder notice may be sent to putative class members by email, first-class mail, and text message. Heartbreakers is also ordered to post the notice and consent form in a common

employee space. The posting shall be made on the date notice is sent and continue for the 60-day opt-in period.

SIGNED this 27th day of October, 2020.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE