# THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| STACEY KIBODEAUX aka ILLUSION, HAILEY CHAPMAN aka DAISY, JEAN HOFFMEISTER aka JOHNE and ROXANNE MURILLO aka UNIQUE/ROXANNE, individuals, | § § § § § § | Case No.: 3:20-cv-00008  JURY TRIAL DEMANDED |
| Plaintiff, | § § | |
| vs. | § § | |
| A&D INTERESTS, INC. D/B/A HEARTBREAKERS GENTLEMAN'S CLUB, MIKE A. ARMSTRONG, PEGGY A. ARMSTRONG AND WHITEY DOE, INDIVIDUALS, | § § § § § | |
| Defendants. | | |

## PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE PURSUANT TO SECTION 216(B) OF THE FLSA

Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh Montgomery
Texas Bar No. 24052214
Ghazzaleh Rezazadeh
Texas Bar No. 24072301
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone: (713) 554-2377
Fax: (888) 995-3335

Jesenia A. Martinez
California Bar No. 316969
**KRISTENSEN LLP**
12540 Beatrice Street,
Suite 200
Los Angeles, California 90066
Telephone: (310) 507-7924
Fax: (310) 507-7906
jesenia@kristensenlaw.com
(*Pro Hac Vice*)

*ATTORNEYS FOR PLAINTIFFS*

**TABLE OF CONTENTS**

**MEMORANDUM OF POINTS AND AUTHORITIES**...............................................................1

I.   **Statement of the Nature and Stage of the Proceeding**.....................................1

II.  **Statement of Issue to be Ruled Upon and Standard of Review** ......................1

III. **Introduction**.............................................................................................................2

IV.  **Plaintiffs' Evidence and Proposed Notice Materials** .........................................4

V.   **Summary of the Argument** ...................................................................................4

VI.  **Argument** .................................................................................................................5

    A.   **Conditional certification and notice under the FLSA and Swales**.....................................................................................................5

    B.   **Plaintiffs and potential opt-ins plaintiffs are sufficiently "similarly situated"**.............................................................................8

    C.   **The economic realities test can be applied on a collective basis, and the evidence weighs in favor of Plaintiffs**............................. 9

      i.   **Degree of control exercised by Defendants**...............................10

      ii.  **Extent of the relative investment of the worker and alleged employer**........................................................................14

      iii. **Degree to which employee's opportunity for profit and loss is determined by the alleged employers**........................16

      iv.  **Skill and initiative required in performing the job**...........17

      v.   **Permanency of the relationship**..............................................17

    D.   **The Court should exercise its broad discretion to facilitate notice to potential opt-in plaintiffs**.....................................18

VII. **Conclusion** ..............................................................................................................20

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 327 P.3d 165 (2014).................10

*Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042 (5th Cir.1987)). .................................9

*Campbell v. City of L.A.*, 903 F.3d 1090 (9th Cir. 2018).........................................18

*Donovan v. Tehco, Inc.,* 642 F.2d 141 (5th Cir.1981) .................................9

*H & R Block, Ltd. v. Housden,* 186 F.R.D. 399 (E.D. Tex. 1999)\. ...........................6

*Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299 (5th Cir. 1998)............7, 9

*Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).5, 19

*In re JPMorgan Chase & Co.,* 916 F.3d 494 (5th Cir. 2019).....................................18

*Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987)...................................6

*McKnight v. D. Houston, Inc.,* 756 F. Supp. 2d 794 (S.D. Tex. 2010);....................................6

*Mooney v. Aramco Servs. Co.,* 54 F.3d 1207 (5th Cir. 1995)........................................6

*Nash v. CVS Caremark Corp.,* 683 F. Supp. 2d 195 (D.R.I. 2010). ...........................19

*Reich v. Circle C. Investments, Inc.,* 998 F.2d 324 (5th Cir.1993)..............................9

*Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 915 (5th Cir. 2008).......................5

*Swales et al. v. KLLM Transport Services, L.L.C.,* 985 F.3d 430 (5th Cir. 2021).............passim

*Usery v. Pilgrim Equipment Co.,* 527 F.2d 1308 (5th Cir.1976).................................17

**Statutes**

29 U.S.C. § 216(b) ...........................................................................................passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This is a FLSA collective action case wherein Plaintiffs allege various wage and overtime violations in the employment of exotic dancers.  Plaintiffs first filed a motion for issuance of notice pursuant to Section 216(b) of the FLSA on May 21, 2020 (Dkt. 34).  Defendants opposed and the parties filed various briefs in support and in opposition, respectively.  This Court granted Plaintiffs' motion for notice on October 27, 2020 (Dkt. 50).  On January 12, 2021, the Fifth Circuit issued its opinion in *Swales*, setting forth a new standard for district courts within this circuit to apply when deciding issues of conditional certification and notice in a FLSA collective action case.  *Swales et al. v. KLLM Transport Services, L.L.C.,* 985 F.3d 430 (5th Cir. Jan. 12, 2021).  As a result, on February 25, 2021, Defendants filed a motion asking this Court to reconsider its prior decision authorizing notice to be sent to potential opt-in plaintiffs (Dkt. 74). The Court granted Defendants' motion to reconsider (Dkt. 75) and, thereafter, issued an order setting forth a framework to assist the Court in determining whether to send notice to potential opt-in plaintiffs (Dkt. 77).  Per the framework set by the Court, the parties have conducted substantial discovery, and Plaintiffs now submit anew their motion for conditional certification and notice and ask this Court to order that notice be sent to potential opt-in plaintiffs pursuant to Section 216(b) of the FLSA.

### II.   STATEMENT OF ISSUE TO BE RULED UPON AND STANDARD OF REVIEW

Applying the standard set forth in *Swales*, whether the Court should enter an order conditionally certifying this matter and authorizing the issuance of notice to potential opt-in plaintiffs. The applicable standard of appellate review for this court's decision is abuse of discretion.

## III.   INTRODUCTION

Plaintiffs Stacey Kibodeaux (S. Kibodeaux), Hailey Chapman (H. Chapman), Jean Hoffmeister (J. Hoffmeister), and Roxanne Murillo (R. Murillo) (collectively, "Plaintiffs") worked as an exotic dancer at A&D Interests Inc. d/b/a Heartbreakers Gentleman's Club (Heartbreakers) in Dickinson, Texas.

On January 14, 2020, Kibodeaux brought this action seeking to recover wages and tips owed to her and other dancers who have been classified as independent contractors at Heartbreakers under the Fair Labor Standards Act (FLSA).  On March 19, 2020, the notices of consent to join this action as opt-in plaintiffs of H. Chapman, J. Hoffmeister, and R. Murillo were filed.  *See* Dkt. 14.

On March 27, 2020, Plaintiffs filed a First Amended Complaint. *See* Dkt. 18. Plaintiffs' First Amended Complaint joined the opt-in plaintiffs as co-plaintiffs with Kibodeaux and joined as defendants, Mike A. Armstrong and Peggy A. Armstrong, who are the owners/officers and managers of Heartbreakers. (Heartbreakers, Mike A. Armstrong and Peggy A. Armstrong are referred to herein collectively as "Defendants".) *See* Dkt. 18. Plaintiffs have alleged that Defendants engaged in illegal conduct that deprived Plaintiffs of income they were due under 29 U.S.C. §§ 203, 206, and 207, and related tipping regulations 29 C.F.R. § 531.35. *See* Dkt. 18.

Plaintiffs are only seeking notice of their FLSA claims.

Plaintiffs contend Defendants misclassified Plaintiffs and other dancers as independent contractors when, in fact, the dancers are Defendants' employees under federal law. As a result of this misclassification, Plaintiffs allege Defendants have violated the FLSA by failing to pay dancers any wages (minimum or overtime), requiring dancers to pay kickback fees in order to work, and forcing dancers to "tip out" ineligible employees.

Defendants misclassified dancers/entertainers at Heartbreakers as independent contractors. Court have routinely granted conditional certification and authorized the issuance of notice pursuant to 29 U.S.C. § 216(b) in nearly identical cases involving exotic dancers challenging their classification as independent contractors.  Defendants made operational decisions at Heartbreakers including applying pay policies equally to all dancers and the named plaintiff and opt-in plaintiffs are similar in every way except hours worked and wages actually due to them—facts which are irrelevant to this inquiry. Moreover, Plaintiffs submit that the employment misclassification issue can be resolved with common proof: evidence of Defendants' employment policies giving rise to these allegations that are substantially standard to all the dancers at Heartbreakers. Pursuant to these policies, and as described in more detail below, Defendants exercised significant and uniform control over the way in which dancers perform at the clubs. In addition, Defendants' pay practices, in violation of the FLSA, are substantially standard to all dancers.

Plaintiffs move this Court for an order conditionally certifying this matter and authorizing the issuance of notice to potential opt-in plaintiffs to inform them of their right to opt-in to this case under 29 U.S.C. § 216(b) of the FLSA. Plaintiffs seek conditional certification in a case with one job position, at a single business location, with the same job duties, working under the same management, and subject to the same unlawful policies of misclassification and absconding of tips.

 This Court previously determined that Plaintiffs satisfied their burden to show that Plaintiffs and proposed plaintiffs are sufficiently "similarly situated" so as to warrant the sending of notice under Section 216(b).  Plaintiffs have filed substantial briefings on this issue and hereby incorporate and adopt by reference, as if set forth herein in full, the arguments, authorities, and evidence submitted in these prior briefings on file with the Court (*see* Dkts. 34, 41, and 43).

Plaintiffs now submit that the available evidence demonstrates that the economic-realities test can be applied on a collective basis in this case, that the evidence weighs in favor of Plaintiffs, and thus, an order conditionally certifying this matter and authorizing the issuance of notice to potential opt-in plaintiffs is appropriate still, even under *Swales*.

## IV.   PLAINTIFFS' EVIDENCE AND PROPOSED NOTICE MATERIALS

| | |
|---|---|
| Exhibit A | Transcript of the Deposition of Stacey Kibodeaux |
| Exhibit B | Transcript of the Deposition of Hailey Chapman |
| Exhibit C | Transcript of the Deposition of Roxanne Murillo |
| Exhibit D | Declaration of Jean Hoffmeister |
| Exhibit E | Transcript of the Deposition of Peggy Armstrong |
| Exhibit F | Transcript of the Deposition of Carl Arceneaux |
| Exhibit G | |
| Exhibit H | |
| Exhibit I | Heartbreakers/Mike Armstrong Flyer re: $20 Booth Fee (Bates No. KIBODEAUX 000008) |

---

| | |
|---|---|
| Exhibit 1 | Plaintiffs' Proposed Written Notice |
| Exhibit 2 | Plaintiffs' Proposed Consent Form |

## V.   SUMMARY OF THE ARGUMENT

Plaintiffs ask the Court to conditionally certify the same class previously defined by the Court in its October 26, 2020 Memorandum Opinion and Order and to authorize that notice be sent to all potential plaintiffs pursuant to Section 216(b) of the Fair Labor Standards Act:

> **Anyone who has worked as a dancer at Heartbreakers during the three-year period before this order, October 27, 2017 through October 27, 2020.**

*See* Dkt. 50 at 16.  Here, the available evidence demonstrates that the economic realities test can be applied on collective level in this case and thus, conditional certification is appropriate according to the standard set forth in *Swales*. As demonstrated herein, the evidence on at least four of the five factors weighs heavily in favor of Plaintiffs and point to employee status, and evidence on the last factor is nondeterminative.  Defendants exercised significant control over Plaintiffs and proposed plaintiffs who were other dancers/entertainers that performed at Defendants' club in Dickinson, Texas.  Plaintiffs and proposed opt-in plaintiffs did not receive any wages or compensation from Defendants for their work performing as dancers/entertainers at Heartbreakers.  Further, all Plaintiffs and proposed plaintiffs were required to sign independent contractor agreements in order to work at Heartbreakers and, therefore, were equally misclassified by Defendants.  The Court should grant Plaintiffs' motion for conditional certification and issuance of notice.

## VI.   ARGUMENT

### A. Conditional certification and notice under the FLSA and *Swales*.

The FLSA allows workers to bring an action either on an individual basis or on a collective basis for himself or herself "and other employees similarly situated." 29 U.S.C. § 216(b).  Under this provision, other similarly situated employees "do not become plaintiffs in the action unless and until they consent in writing." *Sandoz v. Cingular Wireless LLC,* 553 F.3d 913, 915 (5th Cir. 2008). "To keep the opt-in process efficient, district courts 'have discretion' to 'facilitat[e] notice to potential plaintiffs.'." *In re JPMorgan Chase & Co.,* 916 F.3d 494, 500 (5th Cir. 2019) (quoting *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)).

Prior to the Fifth Circuit's decision in *Swales*, notice did not issue unless a court conditionally certified the case as a collective action under the first step of the *Lusardi* approach.

*Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J. 1987); *McKnight v. D. Houston, Inc.,* 756 F. Supp. 2d 794, 800 (S.D. Tex. 2010); *but see Swales et al. v. KLLM Transport Services, L.L.C.,* 985 F.3d 430, 433 (5th Cir. 2021). In *Swales,* the Fifth Circuit rejected the two-step *Lusardi* approach to conditional class certification and instructed courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' " *Swales,* 985 F.3d at 441. Next, courts can either find plaintiffs to be similarly situated based on "the pleadings and only preliminary discovery" and approve notice or order further discovery to determine whether notice is warranted. *Id.* at 441.

Thus, under *Swales,* plaintiffs still bear the burden of making a preliminary factual showing that a similarly situated group of potential plaintiffs exists. *Tice v. AOC Senior Home Health Corp.,* 826 F. Supp. 2d 990, 995 (E.D. Tex. 2011). As such, plaintiffs must establish "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1214 n.8 (5th Cir. 1995). To determine whether an FLSA plaintiff has met his or her burden, courts often look at "whether potential plaintiffs were identified, ... whether affidavits of potential plaintiffs were submitted, ... and whether evidence of a widespread discriminatory plan was submitted." *H & R Block, Ltd. v. Housden,* 186 F.R.D. 399, 400 (E.D. Tex. 1999) (citations omitted).

The Fifth Circuit lamented that in applying the *Lusardi* approach, many courts failed to consider evidence of "potentially dispositive, threshold matters" on whether plaintiffs were in fact similarly situated when deciding whether to authorize notice to potential plaintiffs. *Id.* at 442. (cautioning district courts to avoid "crossing the line from using notice as a case-management tool to using notice as a claims-solicitation tool"). In particular, the *Swales* Court held that the district court's application of *Lusardi* in the underlying case was inappropriate "because the threshold

issue depends on the economic realities-test, which asks how much control the employer had over the independent contractor." *Id*. (citing *Herman v. Express Sixty-Minutes Delivery Serv., Inc*., 161 F.3d 299, 303 (5th Cir. 1998)).  Thus, in cases like this one, where Plaintiffs have alleged that Defendants misclassified them as independent contractors, *Swales* holds that the district court must consider all of the available evidence and may make determinations on the merits of Plaintiffs' claims as necessary. *Id.*  While the *Swales* approach still requires this Court to determine whether Plaintiffs' proposed class is sufficiently similarly situated to warrant the issuance of notice to potential class members, in addition, the district court must consider all evidence relating to the threshold question of how much control the employer had over the independent contractor in order to determine whether the economic-realities test can be applied on a collective basis.  *Id. at* 442.  If in answering this question the district court determines that highly individualized inquiries into each potential opt-in's circumstances will be necessary, only then should the district court deny conditional certification. *Id.*

Importantly, *Swales* did not purport to directly define "similarly situated" under the FLSA, but instead altered the process by which courts make this determination. In so doing, the Fifth Circuit was careful to point out the district court still has "broad, litigation-management discretion" to determine the scope of the putative class (including any subclasses) for purposes of receiving notice. *Id*. at 443.  This broad discretion is "cabined" by two principles: (1) the text of 29 U.S.C. § 216(b) which permits all those "similarly situated" to proceed collectively; and (2) "the Supreme Court's admonition that while a district court may facilitate notice to potential plaintiffs for case-management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* (cleaned up).  In determining whether conditional certification is appropriate, *Swales* further found district courts must also remain mindful of the "dual goals of collective actions," which are: "(1)

enforcement (by preventing violations and letting employees pool resources when seeking relief); and (2) efficiency (by resolving common issues in a single action)." *Id.* at 435. In making its certification determination, *Swales* emphasized district courts "[are] not captive to *Lusardi* or any 'certification' test." Id. at 443.

Finally, as a precautionary measure, Plaintiffs take the opportunity to highlight that *Swales* does not alter treatment of the arbitration issue.  As such, there has been no relevant change of law to warrant re-litigation of the arbitration issue or to serve as grounds for altering or modifying the Court's prior determination on the issue of arbitration. The Court granted Defendants' motion to reconsider on the specific and narrow basis that the Fifth Circuit's opinion in *Swales* changed the applicable standard for determining whether to conditionally certify an FLSA collective action and authorize notice to potential opt-in plaintiffs. The *Swales* opinion in no way addresses or changes the existing Fifth Circuit law regarding the issue arbitration clauses as set forth in *JP Morgan Chase* and its progeny. Finally, the Court previously conducted its analysis of the arbitration issue after extensive briefings by both sides on the subject.

### B.  Plaintiffs and potential opt-ins plaintiffs are sufficiently "similarly situated."

Plaintiffs have demonstrated in their prior briefings on file with the Court (*see* Dkts. 34, 41, 43), by way of pleadings and evidence, that there is "sufficient similarity between the plaintiffs' employment situations."  *Swales*, 958 F.38 at 441.  *Swales* acknowledges that in cases where plaintiffs and proposed plaintiffs "all have the same job description, and the allegations revolve around the same aspect of the job," preliminary discovery is sufficient to make a determination that plaintiff and putative class members, in fact, are "similarly situated."  *Id.* at 441.

Here, Plaintiffs and proposed plaintiffs all participated in the "same job"— dancer/entertainer at Defendants' club—and the "allegations revolve around the same aspect of

the job"— proposed plaintiffs were misclassified as independent contractors by Defendants and were not compensated for their work performing as dancers/entertainers at Defendants' club. As such, this Court aptly determined that Plaintiffs had satisfied their burden to demonstrate that Plaintiffs and potential opt-in plaintiffs are sufficiently "similarly situated" when it granted Plaintiffs' first motion for notice.

Because Plaintiffs have filed substantial briefings on this issue previously, Plaintiffs hereby incorporate and adopt by reference, as if set forth herein in full, the arguments, authorities, and evidence submitted in these prior briefings, all of which are on file with the Court (*see* Dkts. 34, 41, and 43).

### C. The economic realities test can be applied on a collective basis, and the evidence weighs in favor of Plaintiffs.

The economic realities test asks how much control the employer had over the independent contractor. *Swales*, 958 F.38 at 442 (citing *Herman*, 161 F.3d at 303). "To determine employee status under the FLSA, we focus on whether the alleged employee, as a matter of economic reality, is economically dependent upon the business to which he or she renders his or her services." *Herman*, 161 F.3d at 303 (citing *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1043, 1054 (5th Cir.1987)). Stated differently, the district court is tasked with determining "whether the individual is, as a matter of economic reality, in business for himself or herself." *Id.* (citing *Donovan v. Tehco, Inc.,* 642 F.2d 141, 143 (5th Cir.1981)). In making this determination, five factors are applied: the degree of control exercised by the alleged employer; the extent of the relative investments of the worker and alleged employer; the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; the skill and initiative required in performing the job; and the permanency of the relationship. *Id.* (citing *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 327 (5th Cir.1993)). Importantly, "[n]o single factor is determinative." *Id.*

Here, the evidence of Defendants' control over Plaintiffs and proposed plaintiffs is substantial. The available evidence on four of the five factors weighs in favor of Plaintiffs and points to employee status, and evidence on the last factor is nondeterminative. Despite the significant control exercised by Defendants, Plaintiffs and proposed plaintiffs did not receive any wages or compensation from Defendants for their work performing as dancers/entertainers at Defendants' club. Further, all Plaintiffs and proposed plaintiffs were required to sign independent contractor agreements in order to work at Heartbreakers and, therefore, were equally misclassified by Defendants.  As such, the Court should grant Plaintiffs' motion for conditional certification and issuance of notice.

### i.     Degree of control exercised by Defendants

Here, the evidence of the extent and degree of control exercised by Defendants is significant.  Plaintiffs and proposed plaintiffs are not permitted to set their own schedule when working at Heartbreakers because Defendants decide the duration of all dancers/entertainers' shifts, requiring all dancers/entertainers to work a minimum number of hours whenever they present to Heartbreakers to work any particular shift. *See* S. Kibodeax Depo. at 111:8 – 112:11; Decl. of J. Hoffman at ¶ 21; H. Chapman Depo at 41:3-4, 41:22-25, 42:1-15; 42:22 - 43:6; R. Murillo Depo at 131:1-3.  If a dancer/entertainer left before working a full 8 hours, she would be terminated—i.e., told not to return to the club as you would not be permitted to work.  *Id.; see also, Ayala v. Antelope Valley Newspapers, Inc*., 59 Cal. 4th 522, 531, 327 P.3d 165, 171 (2014) ("[p]erhaps the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because the power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities") (internal quotations omitted). In fact, Plaintiff Murillo was terminated from Heartbreakers for this very reason; Murillo needed to leave

her shift early to tend to her child, who had fallen ill, but when she told the manager on duty, "Whitey," he unleashed his "wrath" on her, making clear that she was not to return to work at the club. R. Murillo Depo at 108:6-24.  To solidify their control over the minimum number of hours dancers/entertainers, including Plaintiffs, were required to work when working any shift at Defendants' club, Defendants manufactured an "alternative" for dancers/entertainers by implementing a policy whereby even in the rare instances where a manager authorized dancers/entertainers to leave "early" (i.e., before working the minimum number of hours required by Defendants), the dancers/entertainers would still have to pay a fine for the number of stage rotations they would be skipping, again, simply so they could leave the club without the threat of termination. *See*  S. Kibodeax Depo. at 111:8 – 112:11; Decl. of J. Hoffman at ¶ 21; H. Chapman Depo at 41:3-4, 41:22-25, 42:1-15; 42:22 - 43:6; R. Murillo Depo at 131:1-3. This fine was calculated by managers and DJ who together approximated how many  stage  rotations the dancer/entertainer would  miss by leaving "early" (based on the number of dancers/entertainers present at working that particular shift) and charge dancers/entertainers a $20 fine for each missed stage rotation. *Id.*

Furthermore, Plaintiffs and proposed plaintiffs were not free to decide where or how they performed when they were working any particular shift at Heartbreakers because all dancers/entertainers are required to participate in the stage rotation, which is dictated by DJs and management.  *See* S. Kibodeax Depo. at 48:20 – 49:19; Decl. of J. Hoffman at ¶ 20; H. Chapman Depo at 92:15-23; R. Murillo Depo at 129:11 – 130:15 ("whether there was a lot of customers or a little bit of customers, we always had to dance the stage because in case somebody walked in"). Moreover, just as with skipped stage rotations when dancers/entertainers wanted permission to leave "early", Defendants charged all dancers/entertainers a fine anytime they wanted to skip their

"turn" in the stage rotation for whatever reason.  S. Kibodeax Depo. at 73:4 – 75:4; 77:2-18; Decl. of J. Hoffman at ¶ 21; H. Chapman Depo at 22:3-10; R. Murillo Depo at 128:20-24.

Defendants and their managers required all dancers/entertainers to have their tops off when performing on stage and also while working "the floor" interacting with customers.  Decl. of J. Hoffman at ¶ 20; H. Chapman Depo at 27:14-17; S. Kibodeax Depo. at 127:20 – 128:7; R. Murillo Depo at 25:2-9.

Defendants also required Plaintiffs and proposed plaintiffs to adhere to certain dress code standards set by Defendants and their managers, which included wearing dancer heels at all times and otherwise being instructed by Defendants and their managers what they could and could not wear or whether their appearance met their standards.  H. Chapman Depo at 78:19 – 79:17;  Decl. of J. Hoffman at ¶ 21; R. Murillo Depo at 52:20 – 53:12.  Furthermore, in addition to requiring Plaintiffs and proposed plaintiffs to check in with the DJ when arriving to work any shift at the club, Defendants did not permit dancers/entertainers to leave at the end of their shift until both a DJ and a manager had approved or signed off on a slip of paper issued to each dancer/entertainer. S. Kibodeax Depo. at 77:5-10; Decl. of J. Hoffman at ¶ 19; H. Chapman Depo at 100:3-7.

*See* Plaintiffs' "Exhibit H"

*see also* Plaintiffs' "Exhibit

G,"

*See* Plaintiffs' "Exhibit G."

Last but certainly not least, Defendants did not allow Plaintiffs and proposed plaintiffs to keep whatever money they earned, instead requiring Plaintiffs and proposed plaintiffs to pay a wide array of fines, fees, and other amounts:

1) Heartbreakers required Plaintiffs to pay a house fee simply to be able to work at the club, and the amount of this fee increased as the evening progressed. *See* S. Kibodeaux Depo at 42:16-18; Decl. of J. Hoffman at ¶ 8; R. Murillo Depo at 63:23-6; H. Chapman Depo at 21:9-17.

2) Heartbreakers, and specifically Mike Armstrong, required Plaintiffs to pay a fee to use booths within the club, which are just curtained off areas where dancers/entertainers can perform private dances for customers. *See* Plaintiffs' "Exhibit F," C. Arceneaux Depo at 50:2-51:2; *see also* Plaintiffs' "Exhibit I," Heartbreakers/Mike Armstrong Flyer re: $20 Booth Fee.

3) Heartbreakers charged Plaintiffs a fee just to cash in dance dollars or funny money that dancers/entertainers received from customers (phony money issued to customers by Heartbreakers in exchange for credit card payment). *See* S. Kibodeaux Depo at 70:11-14; Decl. of J. Hoffman at ¶ 8; R. Murillo Depo at 42:4-12; H. Chapman Depo at 22:11-16.

4) mandatory tip out to DJs. *See* S. Kibodeaux Depo at 147:17-23; Decl. of J. Hoffman at ¶¶ 3, 8, 17; H. Chapman Depo at 31:17 – 32:9; R. Murillo Depo at 86:14-16.

5) mandatory stage rotation skip fees. *See supra.*

The evidence that Heartbreakers did in fact exercise significant control over Plaintiffs and other dancers/entertainers, who are the proposed opt-in plaintiffs, is substantial. To summarize, the exercise of control by Defendants includes, but is not limited, the following:

o Heartbreakers did not allow Plaintiffs and proposed plaintiffs to freely set their own work hours while working at the club because they were required to work a minimum 8 hours anytime they wanted to work any shit at Heartbreakers; leaving early without specifical approval from the manager resulted in termination or resulted in dancers/entertainers being required to pay costly fines for missing their turn in the stage rotation;

o   Heartbreakers did not allow Plaintiffs to decide whether and when they performed onstage because all dancers/entertainers were required to participate in the club's stage rotation, which was dictated by DJs and management;

o   Heartbreakers did not even permit Plaintiffs and proposed plaintiffs to decide how they performed on or offstage because management regularly mandated that dancers/entertainers, including Plaintiffs, have their tops off when performing on stage and when they were "working the floor," or interacting with customers;

o   Heartbreakers had certain dress code requirements that Plaintiffs and proposed plaintiffs were required to adhere to, such as always wearing dancer heels (no flats), regardless of the condition of your feet (i.e., blisters) and otherwise being instructed by management to change their attire or appearance for whatever reason; and

o   Heartbreakers did not allow Plaintiffs to keep all of the money they earned and instead required Plaintiffs and proposed plaintiffs to pay house fees, fees to use curtained off areas within the club to perform for customers, fees to cash in dance dollars or funny money, mandatory tip outs to DJs, and mandatory stage rotation skip fees.

The overwhelming evidence on the degree-of-control factor points toward independent contractor status.

### ii.   Extent of relative investment of the worker and alleged employer.

Likewise, the available evidence on the relative-investment factor weighs in favor of Plaintiffs. Plaintiffs' have taken the deposition of Peggy Armstrong, who is named as an individual defendant in this lawsuit and serves as secretary and treasurer of Defendant A&D Interests, Inc./Heartbreaker.  *See* Plaintiffs' "Exhibit E," P. Armstrong Depo at 11:16-19.  Mrs. Armstrong testified that she primarily handles the business end of the club, including financial and insurance matters and submission of quarterly financial reports to Heartbreakers' accountant.  *Id.* at 11:22-12:6. Mrs. Armstrong's testimony

*See* Plaintiffs' "Exhibit G,"

*See gen.* Exhibit G.

*Id.* Additionally, Mrs. Armstrong testified that monthly payroll at Heartbreakers—following the COVID pandemic—still totaled approximately $35,000 per month. P. Armstrong Depo (Ex. E) at 20:20-24.

By contrast, the relative investment of Plaintiffs and proposed plaintiffs is *de minimis.* Plaintiffs testified that in addition to the requisite "dancer heels" and outfits they purchased to perform at the club, they regularly purchased makeup and toiletries, such as hair products, moisturizers, and the like, to upkeep their appearance as a performer at Defendants' club.  *See* S. Kibodeaux Depo at 90:17-91:6; Decl. of J. Hoffman at ¶ 23; Depo of R. Murillo at 98:21-99:5; Depo of H. Chapman at 76:24 – 77:4, 77:12-77:23.  On average, Plaintiffs testified that they spent no more than several hundred dollars to one thousand dollars on these items.  *Id.* Moreover, with the exception of "dancer heels" and dancer/entertainer attire, the only regular expense or investment that Plaintiffs and proposed plaintiffs undertake is makeup and toiletries, which are necessities that the women would purchase for personal use regardless of whether they worked as performer at Defendants' club.

Plaintiffs submit that the evidence on the relative-investment factor weighs heavily in favor of employee status.

### iii.    Degree to which employee's opportunity for profit and loss is determined by the alleged employer.

There is also substantial evidence that the degree to which Plaintiffs and proposed Plaintiffs' opportunity for profit and loss was determined by Defendants. Defendants did not simply determine certain aspects about the club, including ambience, atmosphere, and general aesthetic appeal of the club so as to attract customers.  *See* S. Kibodeaux at 50:1-24; Decl. of J. Hoffmeister at ¶ 24; H. Chapman Depo at 57:10-22, 85:12-19; R. Murillo Depo at 88:2-18, 90:15-23, 91:18-19, 93:2-9, although this evidence weighs heavily on dancers/entertainers' opportunity for profits, whose only earnings come from customers.

As described above, Plaintiffs were not free to choose whether they performed onstage or offstage for substantial duration of their shift when they were required to participate in stage rotation.  *See supra., e.g.,* H. Chapman Depo at 72:19-73:25 (detailing how each set dancers/entertainers performed on stage lasted approximately 40 minutes and each dancer/entertainer would be called to stage to perform a set 7-10 during any particular shift). Likewise, Plaintiffs and proposed opt-in plaintiffs were not able to set their own hours as they were bound by the minimum hourly requirement set by Defendants and enforced by Heartbreakers' managers. *See supra.*  Heartbreakers' also set the price that Plaintiffs and other dancers/entertainers could charge per dance at $20, which directly affected the dancers' opportunity for profit.  *See* C. Arceneaux Depo at 52:19-21.  Finally, by exercising control over dancers/entertainers' appearance while working at the club, including requiring dancers/entertainers to take their tops off both on and off stage, Defendants limited Plaintiffs' and the proposed opt-in plaintiffs' ability to market themselves to customers.  In addition, Plaintiffs and proposed plaintiffs were not permitted to keep whatever money they earned, instead, Heartbreakers required Plaintiffs and proposed plaintiffs to pay a wide array of fines, fees, and other charges.  *See supra.*  Taking into account the significant

exercise of control by Defendants and the other factors where the evidence weighs heavily in favor of independent contractor status, the evidence on the opportunity-for-loss-and-profit factor weighs in favor of Plaintiffs.

### iv.   Skill and initiative required in performing the job

Plaintiffs acknowledge that it does not require any specialized skill or experience to work as an exotic dancer. *See* Depo of S. Kibodeaux at 82:7-21; Depo of H. Chapman at 87:6-14; Depo of R. Murillo at 145:7-14.  Plaintiffs are aware that their appearance is the most important factor in getting a job as a dancer/entertainer. Depo of S. Kibodeaux at 45:2-12; Decl. of J. Hoffmeister at ¶ 22; Depo of R. Murillo at 57:22 – 58:7. Heartbreakers' managers hire dancers/entertainers on the spot, based on their appearance only, and without requiring submission of a resume, an audition, or any sort of formal interview process. Depo of H. Chapman at 44:9-25.

Defendants may argue that the evidence on this factor points to independent contractor status to the extent that dancers/entertainers must exhibit a certain amount of initiative to be successful in their line of work, but Heartbreakers' own hiring process shows that neither skill, experience, nor initiative or necessary for a dancer/entertainer to have a successful tenure working at Defendants' club.  Furthermore, with regards to this factor, the Fifth Circuit has reasoned that "routine work which requires industry and efficiency is not indicative of independence and nonemployee status."  *See Usery v. Pilgrim Equipment Co.,* 527 F.2d 1308, 1314 (5th Cir.1976). For these reasons, the skills and initiative factor also weigh in favor of employee status.

### v.   Permanency of the relationship

Finally, with respect to the permanency factor, although some dancers like Kibodeaux and Chapman worked at Heartbreakers only briefly, others like Hoffmeister and Murillo worked at Defendants' club for extended periods of time.  Hoffmeister worked at Heartbreakers from 2016

to 2018. *See* Decl. of J. Hoffmeister at ¶ 4. Murillo worked at Heartbreakers periodically from 2002 to 2019, taking temporarily leaves of absence to give birth to her children. Depo of R. Murillo at 13:6 – 14:7, 14:13 -15:25; 122:21-25. Although evidence on the permanency factor does not weigh significantly in favor of either employee or independent contractor status, as stated in Swales, when conducting an economic realities test analysis, "[n]o single factor is determinative." *Swales*, 958 F.38 at 442. Here, the available evidence on each of the other factors weighs significantly in favor of employee status. Furthermore, Plaintiffs' proposed class is limited to dancers/entertainers who worked at Heartbreakers during the 3-year period going back from the date this suit was filed.

*See* Plaintiffs' Exhibit H.

### D. The Court should exercise its broad discretion to facilitate notice to potential opt-in plaintiffs.

District courts have discretion to facilitate[e] notice to potential plaintiffs. *In re JPMorgan Chase & Co.,* 916 F.3d at 500 (5th Cir. 2019) (quoting *Hoffmann-La Roche,* 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989)). Even in *Swales,* the Fifth Circuit was careful to point out that the district court has "broad, litigation-management discretion" to determine the scope of the putative class (including any subclasses) for purposes of receiving notice. *Swales,* 958 F.38 at 442. Moreover, in *Campbell v. City of L.A.*, a case relied on by *Swales,* the Ninth Circuit, warned that "the FLSA does not give district courts discretion to reject collectives that meet the statute's few, enumerated requirements." 903 F.3d 1090, 1114 (9th Cir. 2018).

This Court previously determined that notice was warranted in this case.  The evidence submitted herein by Plaintiffs confirms that the Court's decision, even under the new standard set forth in *Swales*, is proper and appropriate.

As such, Plaintiffs respectfully ask the Court to conditionally certify the same class defined and conditionally certified in its October 20, 2020 Memorandum Opinion and Order (*see* Dkt. 50 at 16) and to facilitate notice as articulated in its prior order.

> **Anyone who has worked as a dancer at Heartbreakers during the three-year period before this order, October 27, 2017 through October 27, 2020.**

Plaintiffs are submitting with this motion the same proposed notice and consent form previously filed with the Court previously and asking the Court to authorize same. *See* Plaintiffs' "Exhibit 1" and "Exhibit 2," attached hereto and incorporated herein.  Plaintiffs' proposed notice is designed to be pragmatic and workable, and the relief requested is consistent with the controlling authorities of this jurisdiction.  This proposed notice is "timely, accurate, and informative." *Hoffman-La Roche*, 493 U.S. at 172. This proposed notice is similar in form and content to notices that have been routinely approved in FLSA cases.

Plaintiffs ask the Court to order that notice be mailed, emailed, and texted to all the dancers at Heartbreakers who have been classified as non-employees, giving them a meaningful opportunity to understand their rights and to join this litigation if they chose. *See Nash v. CVS Caremark Corp.,* 683 F. Supp. 2d 195, 200 (D.R.I. 2010).  Additionally, Plaintiffs ask the Court to exercise its discretion to facilitate notice to all potential potentials by also ordering that the notice be posted in a public location near the public entrance of Heartbreakers as well as in the dressing rooms (at least 3 by 5 feet, in bright colors at location agreed to by counsel, consisting of Plaintiffs' Exhibits 1 and 2, attached hereto, and on the Heartbreakers website, including the Heartbreakers Instagram and Facebook pages.

## VII.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court enter an order conditionally certifying this matter for notice pursuant to Section 216(b) of the FLSA and requiring that the notice be issued to potential opt-in plaintiffs according to the above-described parameters proposed by Plaintiffs.

Respectfully Submitted,

**ELLZEY & ASSOCIATES, PLLC**

 */s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
Texas Bar 24040864
Leigh S. Montgomery
Texas Bar 24052214
Ghazzaleh Rezadeh
Texas Bar No. 24072301
1105 Milford Street
Houston, Texas 77006
Tel.: (713) 322-6387
Fax: (888) 995-3335
jarrett@ellzeylaw.com
leigh@ellzeylaw.com
ghazzaleh@ellzeylaw.com

Jesenia A. Martinez
California Bar No. 316969
Kristensen LLP
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Tel.: (310) 507-7924
Fax: (310) 507-7906
jesenia@kristensenlaw.com
(*Pro Hac Vice*)

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I certify a copy of the foregoing document was served in accordance with Rule 5 of the Federal Rules of Civil Procedure to the following counsel of record on May 21, 2021.

Casey T. Wallace
William X. King
Benjamin W. Allen
Wallace & Allen, LLP
440 Louisiana, Suite 1500
Houston, Texas 77002
Phone: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
wking@wallaceallen.com
ballen@wallaceallen.com
***Counsel for Defendants***

           */s/ Jarrett L. Ellzey*
           Jarrett L. Ellzey