**EXHIBIT D**

THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

| | | |
|---|---|---|
| STACEY KIBODEAUX aka ILLUSION, HAILEY CHAPMAN aka DAISY, JEAN HOFFMEISTER aka JOHNE and ROXANNE MURILLO aka UNIQUE/ROXANNE, individuals,<br><br>Plaintiff,<br><br>vs.<br><br>A&D INTERESTS, INC. D/B/A HEARTBREAKERS GENTLEMAN'S CLUB, MIKE A. ARMSTRONG, PEGGY A. ARMSTRONG AND WHITEY DOE, INDIVIDUALS,<br>_____ Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No.: 3:20-cv-00008 JURY<br><br>TRIAL DEMANDED |

## DECLARATION OF JEAN HOFFMEISTER IN SUPPORT OF MOTION FOR ISSUANCE OF NOTICE PURSUANT TO § 216(B) OF THE FAIR LABOR STANDARDS ACT

I, Jean Hoffmeister, declare:

1. I make this declaration of my own personal knowledge, and if called to testify, I could testify and would competently testify hereto under oath.

### INTRODUCTION

1. On March 19, 2020, my counsel filed a Notice of Consent to Sue on my behalf to join the above referenced action. On March 27, 2020, my counsel filed a First Amended Complaint on my behalf naming Defendants, A&D Interests, Inc. d/b/a Heartbreakers Gentleman's Club (Heartbreakers), Mike A. Armstrong, and Peggy A. Armstrong, individuals (collectively Defendants)

2. The damages of this lawsuit are a result of Defendants failing to pay me for any minimum wage or overtime wages for hours that I and other dancers/entertainers worked, illegally charging kickbacks in the form of house fees just to work, taking portions of the tips/monies dancers/entertainers received from customers while performing at the club, and forcing dancers/entertainers, including myself, to subsidize the club by requiring us to tip DJs and other employees at the club.

3. These causes of action arise from Defendants' actions while I was employed by Defendants from 2016-2018. I worked at Defendants' club located at 3200 Gulf Freeway, Dickinson, Texas 77539.

4. During my employment with Defendants, I was an exotic dancer/entertainer.

1. During the time period I worked for Defendants, I worked approximately five shifts per week.

2.     I was not paid hourly for my work at Heartbreakers. Instead, I retained a portion of the dance fees, and customer gratuities and tips. Defendants failed to pay me minimum wages and overtime wages for all hours worked in violation of the Fair Labor Standards Act (FLSA).

3.     I was forced to pay Defendants between $30.00 and $100.00 in "House Fees" and fines per each shift depending on what time I arrived. Also, if I arrived later, they would take a larger percentage of my tips. Additionally, I was forced to tip out at least $20 per shift to the individual DJ.

4.     During my employment as an exotic dancer/entertainer, other exotic dancers/entertainers did not receive minimum wage and overtime wages.

5.     Defendants misclassified me and all other exotic dancers/entertainers at Heartbreakers as independent contractors.

6.     Defendants engaged in the common practice of treating me and all other exotic dancer/entertainers at Heartbreakers as independent contractors, depriving us of hourly wages, overtime wages, and forced tipping.

7.     Defendants dictated to me and all other exotic dancers/entertainers at Heartbreakers how dancers performed their work, setting prices that customers would be charged per dance, tip policies and house fee policies, and controlling when and how dancers performed.

8.     Defendants charged all dancers/entertainers a "House Fee" for the ability to work a particular shift.

9.     Each time I had to pay a "House Fee" the documentation Defendants gave me never matched the amount I paid, making it appear less than what I actually paid.

10.    At the end of each shift, I was required to check-out to calculate my nightly earnings after dance fees, tips and house fees were subtracted from my earnings.

11.    If a dancer/entertainer received dance dollars, Defendants charged a $1 fee for every $20 dance dollars.

12.    I was expected to tip out other employees including DJs. Management appreciated all dancers/ entertainers to tip out other employees.

13.    Defendants also exercised a great deal of control over how I and all other dancers/entertainers performed.

14.    All dancers/entertainers were required to clock-in for each shift by checking in with a manager or DJ and were not permitted to "clock out" to leave after working a shift without approval by DJ and manager.

15.    While working a shift, because all dancers/entertainers were required to participate in the stage rotation dictated by DJs or management, dancers/entertainers, including myself, could not decide where to perform (onstage or offstage). Additionally, management and ownership decided the amount that dancers/entertainers charged customers for a dance as we were required to charge no more than $20 per dance.

16.    Dancers/entertainers, including myself, were not permitted to set our own schedule insofar as we were required to work a full 8 hours anytime we wanted to work any particular shift at Defendants' club. Defendants' managers would threaten dancers/entertainers who wanted to leave early with termination. Alternatively, if a

manager were to allow a dancer/entertainer to leave "early"—before working the required minimum number of hours—she would only be permitted to leave if she agreed to pay a fine. This fine was calculated by managers and DJ by approximating how many stage rotations the dancer/entertainer would miss by leaving early (based on the number of dancers/entertainers present at working that particular shift) and charging dancers/entertainers a $20 fine for each missed stage rotation. This fine was enforced and collected from dancers/entertainers by management specifically. If you refused to pay this fine or wanted to leave before working a full 8 hours without manager approval, you would be terminated—i.e., told not to return to the club as you would not be permitted to work.

17.    Dancers/entertainers, including myself, were required to adhere to dress code that included wearing dancer heels at all times while working at the club and otherwise dressing and having an appearance that was deemed acceptable by management and owners. For example, dancers/entertainers were required to maintain their weight so as to avoid being added to what was described as a "fat list" of dancers/entertainers who management deemed too overweight to work at the club. Also, management required dancers/entertainers, including myself, to change our outfits or otherwise modify our appearance if it was not to the liking of management or ownership. Complying with any such request by management was required or else the dancer/entertainer would not be permitted to work. For example, on one occasion, management instructed me to modify how I chose to groom myself.

18.    Dancers/entertainers, including myself, were required to purchase their own makeup, dancer heels (which were mandatory), and outfits, but Defendants provided us everything else we needed to perform, including music, stage, lighting, private dance areas, and food/beverages to attract clientele to the club.

19.    Dancers/entertainers ability to earn money while performing at Defendants' club was largely determined by what steps the Club undertook to attract clientele on any given day/night. Since the only monies I and other dancers/entertainers earned came from tips/dance fees paid by customers, I and other dancers/entertainers did not have the opportunity to earn any money if Defendants did not actively work to attract customers to come to the Club on that particular day/night. For this same reason, on nights when I ended up making no money, I suffered a loss because I was still required to pay Defendant the required house fee. Regardless of how much experience you have as a dancer, the opportunity to make money was always determined by whether Defendants were able to attract customers to their entertainment venue on that particular day. By this same token, it did not matter how good a dancer/entertainer you were or how efficiently you "worked the floor." In fact, all dancers/entertainers were expressly required by management to constantly be "working the floor" unless you were performing on stage or taking a bathroom break, which management limited to 5-10 minutes.

20.    I observed other dancers/entertainers doing work that was the same as or similar to the work that I did at Defendants' club at the direction of Defendants and management). I estimate that roughly 40-50 dancers/

**EXHIBIT D**

entertainers worked at Defendants' club at any given time, and none of these dancers/entertainers were compensated for their work performing at Defendants' club.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 21st day of May, 2021.



_____

Jean R. Hoffmeister