# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| STACEY KIBODEAUX, HAILEY CHAPMAN, JEAN HOFFMEISTER and ROXANNE MURILLO, individuals, | § § § § § | |
| Plaintiffs, | § § | Case No.: 3:20-cv-00008 |
| vs. | § § | JURY TRIAL DEMANDED |
| | § | |
| A&D INTERESTS, INC. D/B/A HEARTBREAKERS GENTLEMAN'S CLUB, *et al*, | § § § § | |
| Defendants. | § | |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR ISSUANCE OF NOTICE PURSUANT TO SECTION 216(B) OF THE FLSA

COME NOW, Plaintiffs Stacey Kibodeaux (S. Kibodeaux), Hailey Chapman (H. Chapman), Jean Hoffmeister (J. Hoffmeister), and Roxanne Murillo (R. Murillo) (collectively, "Plaintiffs") and file this Reply in Support of their Motion for Issuance of Notice Pursuant to Section 216(b) of the FLSA. In further support of granting Plaintiffs' Motion, and pursuant to the Federal Rules of Civil Procedure, Plaintiffs show this Honorable Court as follows:

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................ii

TABLE OF AUTHORITIES ...........................................................................................iii

SUMMARY OF THE ARGUMENT ................................................................................1

ARGUMENT ...................................................................................................................2

    I.   THE COLLECTIVE ACTION AT ISSUE IN SWALES IS WHOLLY INAPPOSITE. ....................2

    II.  AS POST-*SWALES* DECISIONS CONFIRM, THIS COURT MUST CONSIDER THE APPLICATION OF THE ECONOMIC REALITIES TEST TO THE COLLECTIVE......................3

    III. THE ECONOMIC REALITIES TEST CAN BE APPLIED COLLECTIVELY TO FIND THE ENTERTAINERS OF HEARTBREAKERS ARE EMPLOYEES, AS WAS FOUND IN THE PAST . 6

        *a.   Heartbreakers' prior arbitrations* ........................................................... 7
        *b.   The degree of control* ............................................................................... 8
        *c.   The relative investments* ......................................................................... 10
        *d.   Opportunity for profit and loss* ............................................................... 10
        *e.   Degree of skill and initiative.* .................................................................. 11
        *f.   Extent to which entertainers are an integral part of an adult entertainment Club* 11

    IV. COUNTLESS OTHER COURTS HAVE APPLIED THE ECONOMIC REALITIES TEST IN EXOTIC DANCER CASES AND FOUND THAT EXOTIC DANCERS ARE EMPLOYEES FOR PURPOSES OF THE FLSA ........................................................................................... 12

    V.  THE DEPOSITION TESTIMONY FROM DANCERS AT ANOTHER CLUB IS IRRELEVANT AND INADMISSIBLE FOR CONSIDERATION IN THE CONTEXT OF THIS CASE ................ 15

    VI. DAMAGES ARE CALCULABLE ...................................................................................... 16

CONCLUSION ...............................................................................................................18

CERTIFICATE OF SERVICE ......................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds* ........................................................................ 18

*Badon v. Berry's Reliable Res., LLC* , . No. CV 19-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021). ................................................................................................................. 4, 5

*Clark v. Centene Co. of Texas, L.P.,* 104 F.Supp.3d 813 (W.D. of Tex. 2015) ...................... 17

*Clincy v. Galardi S. Enters., Inc.,* 808 F.Supp.2d 1326 (N.D.Ga.2011) .................................. 14

*Doe Dancer I v. La Fuente, Inc.*, 137 Nev. Adv. Op. 3, 481 P.3d 860 (Nev. 2021) ............... 13

*Gilbo v. Agment, LLC*, 831 F. Appx. 772 (6th Cir. 2020). ....................................................... 12

*Harrell v. Diamond A Entm't, Inc.,* 992 F.Supp. 1343 (M.D.Fla.1997) .................................. 14

*Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299 (5th Cir. 1998) ............... 2

*Hernandez v. Pritchard Indus., (Sw.), LLC*, No. SA-20-CV-00508-XR, 2021 WL 1146005 (W.D. Tex. Mar. 25, 2021, slip copy). ................................................................................ 4

*Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165 (1989). ..................................................... 15

*Jeffcoat v. Alaska Dep't of Labor,* 732 P.2d 1073 (Alaska 1987) ............................................ 14

*Martin v. Priba Corp.,* 1992 WL 486911 (N.D. Tex. 1992); ..................................................... 14

*McFeeley v. Jackson St. Entm't, LLC*, 825 F.3d 235 (4th Cir. 2016). ..................................... 13

*McLaughlin v. Seafood, Inc.,* 861 F.2d 450 (5th Cir. 1988). ................................................... 13

*Morse v. Mer Corp.,* 2010 WL 2346334 (S.D.Ind.2010) ......................................................... 14

*Proctor v. Allsups Convenience Stores, Inc.,* 250 F.R.D. 278 (N.D. Tex. 2008) ..................... 14

*Reich v. Circle C. Investments, Inc.,* 998 F.2d 324 (5th Cir.1993) ........................... 2, 11, 13, 14

*Reich v. Priba Corp.,* 890 F.Supp. 586 (N.D.Tex.1995) .......................................................... 14

*Schofield v. Gold Club Tampa, Inc.,* No. 8:19-CV-3097-VMC-TGW, 2021 WL 533540 (M.D. Fla. Feb. 12, 2021). ................................................................................................. 14

*Swales v. KLLM Transport Services, LLC*, 985 F.3d 430, 442 (5th Cir. Jan. 12, 2021). ...passim

*T.S., Indiv. and on Behalf of Others Similarly Situated v. The Burke Foundation d/b/a Burke Ctr. For Youth,* No: 1:19-cv-809-RP, 2021 WL 1807994 (W.D. Tex. Feb. 22, 2021, slip op.).....6

*Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001).......................................1

*Thompson v. Linda and A. Inc.,* 779 F.Supp.2d 139 (D.D.C.2011); ........................................14

*Thornton v. Crazy Horse, Inc.,* No. 3:06–CV–00251, 2012 WL 2175753 (D. Alaska 2012)...14

*Verma v. 3001 Castor, Inc.,* 937 F.3d 221 (3d Cir. 2019). ......................................................13

*Young v. Energy Drilling Co.,* No. 4:20-CV-1716, 2021 WL 1550343 (S.D. Tex. Apr. 20, 2021)....5

**Statutes**

29 U.S.C. §216(b) ...........................................................................................................17

Code of Ordinances, Dickinson, Tex., ch. 8 art. VII., §§ 8-216 -8-244 ...............................9, 11

TEX. LOCAL GOV'T CODE § 243.001, *et seq.* ....................................................................9, 11

**Other Authorities**

Michael H. LeRoy, *Bare Minimum: Stripping Pay for Independent Contractors in the Share Economy*, 23 Wm. & Mary J. Women & L. 249 (2017)................................................12

**Rules**

ADV. COMM. NOTES to 1966 Amendments to Fed. R. Civ. P. 23(b)(3)...............................2, 18

FED. R. CIV. P. 32(a)(8)......................................................................................................16

## SUMMARY OF THE ARGUMENT

To determine whether Plaintiffs' Motion should be granted, the only question this Court need answer is whether the economic realities test can be applied on a collective basis. As has been determined by many predecessor FLSA cases for exotic dancers, the resounding answer in this case is yes.

Defendants convolute the issue to be decided by this Court, relying on dicta from *Swales* and authorities from outside this jurisdiction. Defendants contend the Fifth Circuit "opted to move the similarity analysis towards Rule 23's comparable commonality concepts." *See* Dkt. #85 at p. 9 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001)). In reality, there is simply no authority from this jurisdiction that supports such an illogical leap. The question to be answered by this Court is whether merits questions, in this case the economic realities test, "[can] be applied on a collective basis." *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430, 442 (5th Cir. Jan. 12, 2021). Given that each Plaintiff and entertainer for Defendant was paid no compensation (minimum or overtime) and forced to pay the same schedule of house fees and fines, the economic realities test can clearly be applied on a collective basis to the entertainers at Heartbreakers.

Undoubtedly, in an FLSA collective action, each individual plaintiff's damages may vary, depending on the hours and duration worked. This does not preclude a finding that the economic realities test can be applied on a collective basis for purposes of trial in this case or any FLSA case where the claimants seek unpaid wages. Moreover, calculation of

damages is not one of the five factors under the economic realities test and so it is not a threshold issue for this motion. *See Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 303 (5th Cir. 1998) (citing *Reich v. Circle C. Investments, Inc.,* 998 F.2d 324, 327 (5th Cir.1993)). Notwithstanding, Plaintiffs' damages, are calculable in this case as in any minimum or overtime wage case, which is all that is required of Plaintiffs under the applicable law and procedural rules.

## ARGUMENT

### I. THE COLLECTIVE ACTION AT ISSUE IN SWALES IS WHOLLY INAPPOSITE.

In *Swales*, there were stark differences amongst the potential opt-ins to whom the district court authorized notice, a group of over 400 drivers to which KLKM offered 41 different compensation agreements to choose from and had different options for leasing their trucks. 985 F.3d at 442. For these reasons, the *Swales* Court ultimately agreed with the employer, who pointed to evidence showing that the application of the economic realities test to plaintiffs and opt-ins in that case with 41 different compensation arrangements would be too individualized.

In contrast, no such "highly individualized inquiry" is needed where Heartbreakers offered Plaintiffs identical "compensation" arrangements whereby all dancers were: (1) subject to the same house fees scale implemented by Heartbreakers, (2) required to comply with the same mandatory tip-out requirements (minimum $20 to DJ at end of each shift), (3) required to participate in stage rotation and to pay the same fine/fee for any missed stage rotations, and (4) required to pay the same fee for cashing out dance dollars, and (5)

required to pay the same $20 fee to Heartbreakers in order to give customers dances in the "booths with curtains" (*see* Exhibit I to Plaintiffs' Motion). Additionally, Heartbreakers required Plaintiffs and all dancers to sign independent contractor agreements with substantially similar, if not identical terms. *See* Dkt. #37-5 (Indep. Contractor/License Agrmt. b/w Defendants and S. Kibodeaux, signed Jan. 2018); Dkt. #37-6 (Indep. Contractor/License Agrmt. b/w Defendants and Hailey Chapman, signed July 2018); Dkt. #37-7 (Indep. Contractor/License Agrmt. b/w Defendants and Roxanne Murillo, signed Oct. 2019); Dkt. #37-8 (Indep. Contractor/License Agrmt. b/w Defendants and Jean Hoffmeister, signed July 2017). The control at issue in this case is the same for all entertainers. The Plaintiffs are sufficiently similar to other entertainers at Heartbreakers, such that the economic realities test could be applied on a collective level.

## II. AS POST-*SWALES* DECISIONS CONFIRM, THIS COURT MUST CONSIDER THE APPLICATION OF THE ECONOMIC REALITIES TEST TO THE COLLECTIVE

Defendants argue the focus of this Court's analysis should be on minor differences in testimonial evidence irrelevant to the threshold question at issue. The "threshold question" is whether the economic realities test can be applied collectively to the entertainers who worked at Heartbreakers. The overwhelming evidence under the economic realities test weigh heavily in favor of Plaintiffs and other employees' similarity, and that the same evidence would be utilized to determine their employee status.

In each of the following post-*Swales* decisions, district courts of the Fifth Circuit discuss *Swales* and its applicability in determining whether conditional certification of an

FLSA collective action case is appropriate, or whether notice should be issued to potential opt-ins.

In *Hernandez v. Pritchard Indus., (Sw.), LLC*, plaintiffs moved to certify a class of janitorial workers who the plaintiffs alleged were not paid overtime for hours and moved the court to issue notice. No. SA-20-CV-00508-XR, 2021 WL 1146005, at *1-*2 (W.D. Tex. Mar. 25, 2021, slip copy). Relying upon *Swales*, the defendants argued plaintiffs had not established they could proceed collectively because "an individualized inquiry will need to be made to determine: (1) whether a janitor worked more than 40 hours per week, (2) whether a payroll code was properly applied to that employee's wages for that week, and (3) whether a payroll code error resulted in the janitor receiving more overtime pay than he/she was entitled." *Id.* at *2. The court granted the plaintiffs' motion over defendants' arguments. *Id.* The court found that "[p]ost-*Swales*, the question the Court must answer now is the same question it would ask at the second stage of the *Lusardi* analysis: are Plaintiffs and Opt-Ins sufficiently 'similarly situated' such that this case should proceed on a collective basis?" *Id.* The "purpose of this analysis is to determine 'early in the case, whether merits questions can be answered collectively.'" *Id.* at *1 (quoting *Swales*, 985 F.3d at 442).

In *Badon v. Berry's Reliable Res., LLC,* the primary dispute was whether plaintiffs and opt-ins were independent contractors or employees. No. CV 19-12317, 2021 WL 933033, at *3 (E.D. La. Mar. 11, 2021). The defendant-employer moved to decertify the conditionally certified collective action, and the court denied the employer's motion. *Id.* at *4. The court found, "the members of the conditional class are similarly situated so that

this matter could appropriately be tried on a collective basis." *Id.* at *3. The court noted evidence in the form of the affidavits of plaintiff, "which indicate that the factual and employment settings for home healthcare workers vis-à-vis Defendants were similar." *Id.* The court rejected defendant's arguments and found defendants failed to put forth evidence to counter plaintiff's evidence "or to persuade the Court that the economic-realities test could not be collectively applied to the six individuals at issue in this matter…" *Id.* at *4. Notably, the court determined defendants' defense that all home healthcare workers it retained during the applicable period were independent contractors rather than employees constituted a universal defense, and thus, defendants would not be forced to raise multiple defenses to the plaintiffs and the opt-ins. *Id.* at *3-*4.

In *Young v. Energy Drilling Co.,* like in this case, the court permitted the parties to submit supplemental briefs addressing the Fifth Circuit's opinion in *Swales*. No. 4:20-CV-1716, 2021 WL 1550343, at *1 (S.D. Tex. Apr. 20, 2021). The court ultimately determined Young was similarly situated to other employees because all were subjected to the same pay practice. *Id.* at *3. The court explains the difference with *Swales*, in that "significant discovery was needed to determine whether the economic realities test for determining employee status could be performed on a class wide basis and the district court was required to address that issue (which was also a liability or "merits" issue) before authorizing class notice." *Id.* at *2 (citing *Swales*, 985 F.3d at 442-43); *see also T.S., Individually and on Behalf of Others Similarly Situated v. The Burke Foundation d/b/a Burke Ctr. For Youth,* No1:19-cv-809-RP, 2021 WL 1807994, at *2 (W.D. Tex. Feb. 22, 2021, slip op.) (explaining that in rejecting *Lusardi*, the Fifth Circuit in *Swales* "instructed

courts to 'identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'") (quoting *Swales*, 985 F.3d at 441).

This Court should consider evidence relating to the threshold question of employee similarity "in order to determine whether the economic-realities test [can] be applied on a collective basis." *Swales*, 985 F.3d at 442. *Swales* did not change the similarity determination in this case from how this Court previously ruled. The Court can apply the economic realities test here, as the entertainers at Heartbreakers are sufficiently similar, just as has been found in federal courts over many years.

### III. THE ECONOMIC REALITIES TEST CAN BE APPLIED COLLECTIVELY TO FIND THE ENTERTAINERS OF HEARTBREAKERS ARE EMPLOYEES, AS WAS FOUND IN THE PAST

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████ *See* **Exhibit H**. Unlike as was argued by Defendants, the focus of the economic realities is on the entertainers' relationship with Heartbreakers. As broken down more specifically below, the evidence set forth by Plaintiffs' Motion shows the factors weigh in favor of a collective determination in this case.

### a. *Heartbreakers' prior arbitrations*

[REDACTED]

### b. *The degree of control*

Defendants argue the differing testimony from each Plaintiff on specific scheduling issues or other fees, must therefore mean the degree of control cannot be determined on a collective level for all entertainers. Defendants' focus is too myopic.

[REDACTED] **Exhibit H**, p. 7. However, it is comparative to the control the Club did have over the entertainers in both the [REDACTED] and as it does today that remains the issue for determination at a collectively level.

Dancers are required to clock in and out, pay a floor fee (which varies upon admission), and the Club has some rules and policies applicable to all dancers. *See* Dkt. #18 at p. 16; *see also* **Exhibit H**, p. 7. Defendants pay no compensation to any entertainer, and all of them have signed independent contractor agreements according to Defendants. *See* Dkt. #37-5 (Indep. Contractor/License Agrmt. b/w Defendants and S. Kibodeaux, signed Jan. 2018); Dkt. #37-6 (Indep. Contractor/License Agrmt. b/w Defendants and Hailey Chapman, signed July 2018); Dkt. #37-7 (Indep. Contractor/License Agrmt. b/w Defendants and Roxanne Murillo, signed Oct. 2019); Dkt. #37-8 (Indep. Contractor/License Agrmt. b/w Defendants and Jean Hoffmeister, signed July 2017). Most importantly, Defendants control Heartbreakers' operating hours, cover charge, age and dress of customers, lighting, atmosphere, type of food or drink offerings and prices, and wages of other workers employed in the business, and the music system. *See* Dkt. #18 at pp. 10-14; **Exhibit G**; **Exhibit H**, p. 9. Defendants pay the rent, taxes, maintenance, insurance and utilities for the Club. *See* Dkt. #18 at pp. 10-14; **Exhibit G**; **Exhibit H**, p. 9. Defendants also enforce the dress code and other rules and regulations against entertainers' dress and performance, because Defendants can also be held accountable for such violations by an entertainer. *See* Code of Ordinances, Dickinson, Tex., ch. 8 art. VII., §§ 8-216 -8-244; *see also* Tex. Local Gov't Code § 243.001, *et seq.*

### c. *The relative investments*

Defendants claim that "Plaintiffs' gloss over this factor because it reveals significant variances." *See* Dkt. #85 at p. 22. Defendants' focus on minutiae regarding the purported variances in the expense amounts approximated by Plaintiffs from memory during their depositions and attempt to "gloss over" the word "relative," as essential aspect of this factor. Here, ██████████ variances in the amounts paid out by Plaintiffs on hair, makeup, nails, etc. pales in comparison to the expenses of the Club. *See* **Exhibit H**, p. 9; *see also* Plaintiffs' **Exhibit G**, ████████████████████████████████ ████████████████████████████████. Any differences in the amount spent amongst Plaintiffs and the other entertainers will not matter when compared to the significantly greater investment in the operating expenses of the Club by Defendants. This factor, across the board, weighs heavily in favor of the Plaintiffs and all entertainers who worked for Heartbreakers.

### d. *Opportunity for profit and loss*

The opportunity for profit and loss factor also ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████ Similarly, this Court should find that Plaintiffs are employees and, at a minimum,

that evidence of the economic-realities test factors weigh in favor of a finding that Plaintiffs and proposed opt-ins are employees.

### e. *Degree of skill and initiative*

Defendant again puts a focus on Plaintiffs' testimony as to the degree of skill and initiative factor. However, the focus on this factor is what is required to do the job of an entertainer and that is a question that can be answered for all the entertainers by Defendants own agreement. Defendants do not require prior adult entertainment experience, education, training or even an audition to become an entertainer. Notably, the Fifth Circuit has concluded that "the ability to develop and maintain rapport with customers is not the type of initiative contemplated by this factor." *Reich v. Circle C. Investments, Inc.*, 998 F.2d 324, 328 (5th Cir. 1993). Thus, Defendants' arguments that initiative varies amongst dancers, is not of issue for this factor. More importantly, when viewed from what is required to be an entertainer at Heartbreakers, this factor can easily be applied to a collective group of entertainers.

### f. *Extent to which entertainers are an integral part of an adult entertainment Club*

Defendant attempts to argue, based on one answer to a deposition question, that somehow adult entertainers are not integral to Heartbreakers. Although "Heartbreakers, A Gentleman's Club," could have chosen to operate only as a bar, it did not and is subject to sexually oriented business laws of the city of Dickinson and State of Texas. *See* Code of Ordinances, Dickinson, Tex., ch. 8 art. VII., §§ 8-216 -8-244; *see also* TEX. LOCAL GOV'T CODE § 243.001, *et seq.* Instead, it's a "Gentleman's Club," which relies on female, adult

entertainers for its entertainment. Much like the arbitrator found in *Jersey*, a topless club cannot operate as a topless club without topless dancers. Importantly, this factor applies across all potential 'entertainers,' to Heartbreakers.

## IV. COUNTLESS OTHER COURTS HAVE APPLIED THE ECONOMIC REALITIES TEST IN EXOTIC DANCER CASES AND FOUND THAT EXOTIC DANCERS ARE EMPLOYEES FOR PURPOSES OF THE FLSA

The evidence on the factors under the economic realities test in this FLSA dancer case, like the evidence considered in countless other cases like it throughout the nation, weighs in favor of Plaintiffs. Courts throughout the country have ruled, in near unanimity, that exotic dancers are employees for purposes of the FLSA. In fact, in a 2017 study published in the William & Mary Journal of Women and the Law, a professor at the University of Illinois College of Law examined 75 federal and state court cases in which dancers sued their clubs for unpaid minimum wages, overtime and unlawful pay deductions. He found that courts ruled in favor of the dancers in all but three cases. Michael H. LeRoy, *Bare Minimum: Stripping Pay for Independent Contractors in the Share Economy*, 23 Wm. & Mary J. Women & L. 249 (2017). "In thirty-eight cases, courts ruled that dancers were employees; only three courts ruled that dancers were independent contractors," according to the study. *Id.* at 249, 260.

By way of example, in *Gilbo v. Agment, LLC*, the Sixth Circuit affirmed a ruling by the district court granting summary judgment in favor of two plaintiffs that were former dancers at the defendant's club, Brass Pole, who argued that they were covered by the FLSA and were employees, not independent contractors. *Gilbo v. Agment, LLC*, 831 F. Appx. 772, 773 (6th Cir. 2020). In *Gilbo*, much like the Defendants in this case, Brass

Pole claimed that the exotic dancers who work there are independent contractors, not employees. *Id.* at 774. Like Plaintiffs, the plaintiffs in *Gilbo*, instead of being paid wages for the dances they provided received only tips from customers, a portion of which they were required to pay back to Brass Pole after every dance. *Id.*

Similarly, in *Verma v. 3001 Castor, Inc.,* the court held "[w]e easily conclude the dancers were dependent upon the business to which they render service. They were not, as a matter of economic reality, operating independent businesses for themselves." 937 F.3d 221, 232 (3d Cir. 2019). In *Circle C.,* the Fifth Circuit applied the economic realities test and ultimately concluded that the dancers' dependency on the nightclub favored determination of employee status within coverage of the FLSA. 998 F.2d at 329 (5th Cir. 1993). The court likewise rejected the defendants' "creative argument" that dancers were mere tenants who rent stages, lights, dressing rooms, and music from Circle C. *Id.*

In *McFeeley v. Jackson St. Entm't, LLC*, the court held that when considering all six factors together, particularly the defendants' high degree of control over the dancers, the totality of circumstances speaks clearly to an employer-employee relationship." 825 F.3d 235, 244 (4th Cir. 2016).

In *Doe Dancer I v. La Fuente, Inc*., the court found employee status in a dancer case, reasoning that "we are simply not persuaded that their theoretical scheduling flexibility is in any real sense 'the same as [the] true economic independence' that might exist in the case of an independent contractor. 137 Nev. Adv. Op. 3, 481 P.3d 860, 870 (Nev. 2021) (quoting *McLaughlin v. Seafood, Inc.,* 861 F.2d 450, 452-53 (5th Cir. 1988). Finally, in *Schofield v. Gold Club Tampa, Inc.,* the court granted plaintiffs' motion for

summary judgment finding that the evidence on the economic realities factors warranted judgment as a matter of law on the plaintiffs' misclassification claim. No. 8:19-CV-3097-VMC-TGW, 2021 WL 533540, at *4 (M.D. Fla. Feb. 12, 2021).

Nearly "[w]ithout exception, these courts have found an employment relationship and required the nightclub to pay its dancers a minimum wage." *Harrell v. Diamond A Entm't, Inc.,* 992 F.Supp. 1343, 1348 (M.D.Fla.1997); *see Reich v. Circle C.* 998 F.2d 324, 329 (5th Cir.1993); *Thornton v. Crazy Horse, Inc.,* No. 3:06–CV–00251–TMB, 2012 WL 2175753 (D.Alaska June 14, 2012); *Clincy v. Galardi S. Enters., Inc.,* 808 F.Supp.2d 1326, 1343 (N.D.Ga.2011); *Thompson v. Linda and A. Inc.,* 779 F.Supp.2d 139, 151 (D.D.C.2011); *Morse v. Mer Corp.,* 2010 WL 2346334, at *6 (S.D.Ind.2010); *Reich v. Priba Corp.,* 890 F.Supp. 586, 594 (N.D.Tex.1995); *Martin v. Priba Corp.,* 1992 WL 486911, at *5 (N.D. Tex. 1992); *see also Doe v. Cin–Lan, Inc.,* No. 08–CV–12719, 2008 WL 4960170 (E.D.Mich.2008) (in assessing motion for preliminary injunction, finding that dancer was substantially likely to succeed on claim that she is an employee under FLSA); *Jeffcoat v. Alaska Dep't of Labor,* 732 P.2d 1073 (Alaska 1987) (finding dancers to be employees under state labor laws modeled on FLSA).

These decisions align with the spirit and purpose of allowing FLSA collective action cases, which serve the interest of judicial economy and aid in the vindication of plaintiffs' rights." *Proctor v. Allsups Convenience Stores, Inc.,* 250 F.R.D. 278, 280 (N.D. Tex. 2008) (citations and internal quotation marks omitted). Indeed, collective actions allow "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources" while also benefitting the judicial system "by efficient resolution in one

proceeding of common issues of law and fact arising from the same alleged [wrongful] activity." *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989).

## V. THE DEPOSITION TESTIMONY FROM DANCERS AT ANOTHER CLUB IS IRRELEVANT AND INADMISSIBLE FOR CONSIDERATION IN THE CONTEXT OF THIS CASE

Defendants submit inadmissible deposition testimony of non-parties, Casey Nelson and Brandy Phillips, in an unrelated case, between completely different parties, in support of their Response. *See* Exhibit A-1 and Exhibit A-2 to Defendants' Response (Dkt. #85-1, #85-2.). These out-of-court statements by Ms. Nelson and Ms. Phillips are offered for the truth of the matters asserted and are inadmissible hearsay not subject to any applicable exception as well as completely irrelevant to the inquiry in this case and motion. The Court should only consider the evidence submitted by entertainers who performed at Heartbreakers, because that is all whom this collective action seeks to protect. *See* Dkt. 18, pg. 18.

Specifically, Defendants cite this inadmissible hearsay in support of their Response as follows:

o To prove that evidence of factors under the economic realities purportedly "reveal a lack similarity" based on Ms. Phillips' assertion that she was purportedly given an "option at Heartbreakers" whether to work per an employee agreement or independent contractor agreement. *See* Dkt. #85 at 26 and n.52 (citing Exhibit A-2, Deposition Transcript of B. Phillips in unrelated case)

- To prove that Heartbreakers treated dancers as independent contractors as opposed to as employees; *See* Dkt. #85 at 7 and n.8 (citing Defendants' Exhibit A-2)

- To prove "how Heartbreakers was in fact different from the club that [plaintiff] had sued" in a wholly unrelated case involving completely different parties. *See* Dkt. #85 at 7; and

- To prove that Heartbreakers was "totally different" from other clubs and that dancers at Heartbreakers "get treated better for sure." *See* Dkt. #85 at 7 and n.9 (citing Exhibit A-1, Deposition Transcript of C. Nelson in unrelated case

The deposition testimonies of Phillips and Nelson from a prior proceeding are inadmissible hearsay in this case, which does not involve the same parties and same subject matter. "A deposition lawfully taken and, if required, filed in any federal – or state – court action may be used in a later action involving the same subject matter between the same parties, or their representatives or successors in interest, to the same extent as if taken in the later action." FED. R. CIV. P. 32(a)(8). This case does not involve the same parties; thus, this evidence should not be admissible for consideration herein.

The deposition testimonies of Ms. Nelson and Ms. Phillips from the unrelated cases involving completely different parties are completely irrelevant hearsay in this motion. As such, the Court should not consider any such evidence relevant to the inquiry herein. The question is whether the dancer/entertainers of *Heartbreakers* are sufficiently similar to justify collective action treatment. Not any other adult entertainment club.

**VI.    DAMAGES ARE CALCULABLE**

Defendants finally argue the merits of the collective class's damages claims renders treatment on a collective basis impractical. This argument lacks merit under the facts and law. *See* Dkt. #85 at pp. 27-29.

Here, Plaintiffs' and proposed opt-in plaintiffs' damages are calculable and subject to the same applicable standards collectively. Plaintiffs are making a minimum wage and overtime claim, calculable by applying any entertainers' hours worked by the Federal minimum wage, and applicable overtime wage.[1] The damages are calculable as to any entertainer at Heartbreakers. Just like in the *Young* case, the dancers of Heartbreakers are similarly situated because they are subjected to the same pay practice. *Young,* 2021 WL 1550343, at *3. That is, there is no compensation provided to any entertainer.

Plaintiffs and proposed opt-in plaintiffs will seek actual damages including, but not limited, compensation for hours and overtime hours of work performed by Plaintiffs and proposed opt-in plaintiffs for which Defendants failed to pay fair compensation. *See also Clark v. Centene Co. of Texas, L.P.,* 104 F.Supp.3d 813 (W.D. of Tex. 2015) (holding that testimony of plaintiffs was sufficient to prove hours worked by just and reasonable inference and, further, that testifying plaintiffs/employees were fairly representational of non-testifying employees such that their testimony and other evidence in the record was sufficient to establish a prima facie case for the non-testifying employees as a matter of just and reasonable inference). Should Defendants' records be deficient, an entertainer's

---

[1] Plaintiffs also make a liquidated damages claim, which again is calculable because it is a multiplier of the wage damages. 29 U.S.C. §216(b) Likewise, Plaintiffs makes claims for attorneys' fees, which would likewise be determined on a collective level from the same Plaintiffs' counsel's own affidavit submission. Defendants do not argue these damages are of issue in the notice argument.

testimony or affidavit of her dates and hours worked is sufficient. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686– 88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded by statute on other grounds*; *see also Clark,* 104 F.Supp.3d 813 (W.D. of Tex. 2015).

Although Defendants would have the Court believe otherwise, computation of the entertainers' damages will not require highly individualized inquiry into the circumstances of each entertainer, nor will it prevent treatment on a collective basis. In fact, even in certain class actions certified under Rule 23, if liability is found on a class level, a separate determination of the damages suffered by each individual within the class is appropriate. *See e.g.,* ADV. COMM. NOTES to 1966 Amendments to Fed. R. Civ. P. 23(b)(3) (a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class).

## CONCLUSION

The available evidence demonstrates that the economic realities test can be applied on collective level in this case and thus, conditional certification is appropriate according to *Swales*. As demonstrated herein, the evidence on at least four of the five factors weighs heavily in favor of Plaintiffs and points to employee status, and evidence on the last factor is nondeterminative or "neutral." Defendants exercised significant control over Plaintiffs and the other dancers/entertainers that worked at Defendants' club in Dickinson, Texas. Plaintiffs and proposed opt-in plaintiffs did not receive any wages or compensation from

Defendants for their work performing as dancers/entertainers at Heartbreakers. Further, all Plaintiffs and proposed plaintiffs were misclassified by Defendants and worked under the same economic control by Defendants.  Plaintiffs' Motion for Issuance of Notice should be granted.

Respectfully submitted,

**ELLZEY & ASSOCIATES, PLLC**

  */s/ Jarrett L. Ellzey*
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh S. Montgomery
Texas Bar No. 24052214
Ghazzaleh Rezazadeh
Texas Bar No. 24072301
1105 Milford Street
Houston, Texas 77006
Office: (713) 322-6387
Facsimile: (888) 276-3455
jarrett@ellzeylaw.com
leigh@ellzeylaw.com
ghazzaleh@ellzeylaw.com

Jesenia A. Martinez
California Bar No. 316969
Kristensen LLP
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Tel.: (310) 507-7924
Fax: (310) 507-7906
jesenia@kristensenlaw.com
*(Pro Hac Vice)*

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I certify a copy of the foregoing document was served in accordance with Rule 5 of the Federal Rules of Civil Procedure to the following counsel of record on June 23, 2021.

Casey T. Wallace
William X. King
Benjamin W. Allen
Wallace & Allen, LLP
440 Louisiana, Suite 1500
Houston, Texas 77002
Phone: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
wking@wallaceallen.com
ballen@wallaceallen.com
***Counsel for Defendants***

 */s/ Jarrett L. Ellzey*
Jarrett L. Ellzey