UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| STACEY KIBODEAUX, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-cv-00008 |
| | § | |
| A&D INTERESTS, INC., d/b/a | § | |
| HEARTBREAKERS GENTLEMEN'S | § | |
| CLUB, *et al.*, | § | |
| | § | |
| *Defendants* | § | |

**<u>DEFENDANTS' OPPOSED MOTION FOR STAY</u>**

Defendants Mike Armstrong, Peggy Armstrong, and A&D Interests, Inc., d/b/a Heartbreakers Gentlemen's Club, respectfully ask the Court to stay their compliance with the Opinion and Order dated January 10, 2022 ("Order") (Doc. No. 93). After strenuous consideration of the pros and cons, Heartbreakers intends on filing a petition for a writ of mandamus with the Fifth Circuit tomorrow.

Of course, Heartbreakers has no intention of willfully disobeying the Court's Order. However, compliance with the Order will moot the issues to be appealed. In order to preserve its right to seek orderly appellate review (through the only means available) and avoid running afoul of the Court's directives, Heartbreakers respectfully asks for a stay until that process has concluded. Plaintiffs are opposed.

## BACKGROUND

The Court is intimately familiar with the underlying facts and procedural history of this case. Briefly, after the Fifth Circuit issued its decision in *Swales v. KLLM Transp. Services, LLC*, 985 F.3d 430 (5th Cir. 2021), the Court vacated its conditional certification order, issued a new briefing schedule, and permitted the parties to conduct further discovery. (Doc. Nos. 74, 75, 77). Plaintiffs filed their "Motion for Conditional Certification and Issuance of Notice" on May 20, 2021. (Doc. No. 82). Heartbreakers filed its response on June 11, 2021. (Doc. No. 85). A reply and surreply followed. (Doc. Nos. 87 & 88). In the same timeframe, Heartbreakers filed two summary judgment motions, both of which remain pending. (Doc. Nos. 89, 90).

On January 10, 2022, the Court granted Plaintiffs' request to send notice and ordered Heartbreakers to produce a class list. *Kibodeaux v. A&D Interests, Inc.,* 3:20-CV-00008, 2022 WL 92856 (S.D. Tex. Jan. 10, 2022). The Order requires the parties to provide proposed notice and consent to join forms to the Court and for Heartbreakers to produce a class list by January 21, 2022.

Although Heartbreakers has confirmed that it lacks email addresses and is still searching for records indicating the dates of employment for potential plaintiffs, it is otherwise prepared to produce a class list that contains the names, addresses, and phone numbers (where available) of the potential plaintiffs.

Further, the undersigned reached out to Plaintiffs' counsel on January 18, 2022, to confer about the contents of the notice and consent to join forms. The parties have not yet resolved the contents of any notice forms but intend to do so in the near future.

## ARGUMENT

To obtain a stay pending appellate review, a movant must show: (1) a likelihood of success on the merits; (2) irreparable injury if the stay is not granted; (3) whether granting the stay would substantially harm the other parties; and (4) whether granting the stay would serve the public interest. *Nken v. Holder,* 556 U.S. 418, 425-26 (2009). A stay is appropriate because all factors are satisfied.

### A.    Likelihood of Success on the Merits

This should come as no surprise: Heartbreakers adamantly disagrees that notifying potential plaintiffs who entered into binding arbitration agreements is permissible under *In re JPMorgan Chase & Co.*, 916 F.3d 494 (5th Cir. 2019). Heartbreakers has set out a multitude of reasons for its disagreement, all supported with binding authority from the Fifth Circuit and the Supreme Court. (*See, e.g.,* Doc. Nos. 37, 43, 51, 85).

Heartbreakers remains convinced that it is likely to succeed on this issue. For instance, although the Court is of the view that *JPMorgan's* "nothing in the agreement" statement (*see In re JPMorgan*, 916 F.3d at 501) constitutes the holding, Heartbreakers differs. Indeed, *Swales* pointed to the last page of *JPMorgan* for its holding and framed it without mentioning the existence of collective action waivers at all: "[i]n *JP Morgan*, we held that it was beyond the district court's discretion to order notice to employees who had

signed arbitration agreements and were thus not potential participants of the FLSA collective action." *Swales*, 985 F.3d at 440, n. 58 (citing *In re JPMorgan*, 916 F.3d at 504).

Additionally, it is still the law that there must be some affirmative contractual basis for concluding that the parties to an arbitration agreement consented to dispute resolution by way of participation in a collective action pending in a court versus bilateral arbitration. The Supreme Court has made it clear that a court cannot infer from contractual silence that the parties consented to procedures that are fundamentally at odds with the very nature of bilateral arbitration. *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)).

There could not be a more fundamental difference between consenting to participation in a collective action pending in a court versus consenting to participation in an individualized arbitration. The arbitration agreements are silent as to the former and only provide positive consent for the latter. Reasoning by negative inference does not supply the missing ingredient—consenting to participation in a court proceeding.

Moreover, the arbitration agreement is *itself* the relevant contractual mechanism that prohibits participation in a collective action. That is because an agreement to arbitrate "is, in effect, a specialized kind of forum-selection clause," *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974), by which the parties "promise to have a dispute heard in some forum other than a court." *Cohen v. UBS Fin. Services, Inc.*, 799 F.3d 174, 179 (2d Cir. 2015). An express class or collective action waiver is simply "a promise to forgo certain procedural mechanisms in court." *Id.* (emphasis original).

It follows that by agreeing to have their disputes heard in an arbitral forum, potential plaintiffs necessarily "gave up their right to participate in a [collective] action *by virtue of* their agreement to resolve disputes exclusively through individual arbitration." *Vine v. PLS Fin. Services, Inc.*, 807 Fed. Appx. 320, 328 (5th Cir. 2020) (italics original). Nothing in the FLSA says that "agreements requiring one-on-one arbitration become a nullity if an employee decides that he wants to sue collectively after signing one." *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018).

Next, while Heartbreakers does appreciate and respects the time and effort that the Court took to review the briefing and voluminous testimonial evidence submitted on the issue of similarity, after very close study of the Order, Heartbreakers believes that the Court erred in performing the "rigorous" similarity analysis required under *Swales*, or that it at least did not hold Plaintiffs to their burden of proving similarity as required.

For instance, the Court "agree[d] with Defendants that Plaintiffs' testimony is not entirely consistent on all fronts," and acknowledged that they "offered conflicting testimony about how the alleged tip-sharing scheme worked." *Kibodeaux*, 2022 WL 92856, at *8-9. The Court further recognized that "[a]dmittedly, calculating damages may present some difficulties if we reach that point" given that Plaintiffs "characterize[d] Heartbreakers' timekeeping records as unreliable or untrustworthy" and gave "vague testimony" about how much time they claim to have actually worked. *Id.*; *Swales*, 985 F.3d at 432 ("The district court need not, and should not, disregard this evidence").

Nonetheless, the Court concluded that "Defendants have not explained how these or any other differences … will preclude me from deciding the dancers' employment status on a class-wide basis." *Kibodeaux*, 2022 WL 92856, at *8. But under *Swales*, it is not Heartbreakers' burden to disprove similarity; it was Plaintiffs' burden to show how the economic realities test's factors can be applied collectively. And even though this case has been pending since January 2020, Plaintiffs offered the Court absolutely no evidence from any potential plaintiff about their experiences. Indeed, the *only* evidence from non-party dancers was presented by Heartbreakers, and that evidence was effectively disregarded on grounds that it was not temporally aligned with the statutory period.[1]

Nor did Plaintiffs offer any class-wide proof as to whether Heartbreakers could be *liable* for the various types of damages they seek. For example, an alleged employer's overtime liability is only triggered if an employee proves that she performed more than 40 hours of compensable work in a given "workweek," *i.e.*, a regularly recurring period of seven consecutive days. 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.105.

While the Court acknowledged that Plaintiffs "could not identify any workweek where they worked over 40 hours," *Kibodeaux*, 2022 WL 92856, at *8, it did not address the more fundamental problem: "the fact that some Plaintiffs did not actually work overtime hours, creates a disparate factual setting among the individual Plaintiffs as the

---

[1] Of course, the same could be said of testimony from two of the Plaintiffs who performed at the club prior to October 2017. But it does not appear that the Court disregarded their testimony as lacking probative force.

6

issue of liability is not susceptible to common proof." *Rindfleisch v. Gentiva Health Services, Inc.*, 22 F. Supp. 3d 1295, 1303 (N.D. Ga. 2014).

Of course, the elephant in the room is that in November 2020, the Fifth Circuit denied Heartbreakers' first mandamus petition in a one-line, unpublished *per curiam* order issued less than a full day after it was docketed. However, given that the denial lacked any explanation, it cannot be said that Heartbreakers' second effort will assuredly fail again; denial could have been predicated on any number of grounds since "[t]he issuance of an extraordinary writ 'is in large part a matter of discretion with the court to which the petition is addressed.'" *Key v. Wise*, 629 F.2d 1049, 1055 (5th Cir. 1980) (citation omitted).

Nor can it be said that the denial of the petition creates law of the case or *res judicata*/collateral estoppel obstacles. "Because orders denying a petition for mandamus are most frequently denied as a result of the special limitations inherent in the writ itself, and not on the merits, such denials are not ordinarily given 'law of the case' effect, and the parties are not precluded from raising the issue in a subsequent appeal." *Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001); *see also Key*, 629 F.2d at 1054-55 ("[n]o explanation for … the denial of the writ of mandamus was given by the panels…. Thus, we are not bound by any 'law of the case'"); *United States v. Dean*, 752 F.2d 535, 541 (11th Cir. 1985) ("because we cannot determine the basis for the prior denial of the government's petition for a writ of mandamus, the denial does not have res judicata effect and does not prevent us from reaching the merits of the new petition").

Although divining the reasons why the mandamus panel denied the petition is like reading tea leaves, it is at least somewhat telling that after Heartbreakers filed its petition for rehearing en banc, the panel took the relatively unusual step of requesting a response from Plaintiffs in December 2020—after all, petitions for rehearing are "highly disfavored" and are typically met with quick rejection.

Then, the panel delayed disposing of Defendants' petition for rehearing for about two months, and only denied the request after *Swales* was issued—a fact that the mandamus panel made note of in its ultimate denial order. As the Fifth Circuit has explained in the past, "[o]ne reason for denying mandamus even when the applying party appears to be entitled to an appellate cure is that the 'complaining party has an adequate remedy by appeal or otherwise,'" which in this case meant invoking *Swales* and seeking reconsideration of the conditional certification. *Key*, 629 F.2d at 1055 (citation omitted).

## B.   Irreparable Injury

Without a stay, Heartbreakers will suffer irreparable injury because it firmly believes that commencement of the notice process will run afoul of the "bedrock rules" that "define and delimit a district court's discretion," namely, avoidance of rulings that "signal approval of the merits or otherwise stir up litigation." *Swales*, 985 F.3d at 434 (citation omitted).

Heartbreakers' insistence on pursuing extraordinary appellate relief is a product of the palpable harms it foresees; the very real risk that notice will needlessly stir up collateral arbitrations (or other litigation). Additionally, the Court's finding that the arbitration

8

agreements are essentially waivable if a potential plaintiff attempts to participate in a collective action has far reaching consequences that go beyond the instant case. None of these harms can be undone later on.

In addition, not only will Heartbreakers' voluntary compliance with the Order render the issues moot, notice and the results of sending notice will most likely expand the scope of discovery, probably invite further briefing on dispositive issues, and alter the shape of a trial. While Heartbreakers would absolutely prefer having the option of pursuing an ordinary appeal of the Order post-judgment (under a less exacting standard of review no less), the *only* chance it has to avoid against the permanent harms it foresees is to proceed with a mandamus petition. And to pursue that avenue, a stay is required.

## C.    Plaintiffs' Interests

In contrast to the permanent harm that Heartbreakers will suffer absent a stay, delaying its compliance with the Order will not impede Plaintiffs' ability to advance the merits of their own claims or unduly delay this case. As it stands, the notice period will last for two months. In the meantime, it would seem advisable for the parties to seek entry of a new scheduling order and schedule a trial date with the Court, all of which is contingent on whether notice issues, and if so, how it proceeds.

Along those lines, Plaintiffs cannot claim that a stay will negatively affect the interests of potential plaintiffs. Given that the Court has defined a fixed class period and presumably intended to equitably toll limitations, no potential plaintiffs' claims are expiring.

Last, it bears mentioning that the Court has not ruled on two pending summary judgment motions: one challenging Ms. Armstrong's status as an "employer" (which Plaintiffs have not opposed), and another that seeks dismissal of Plaintiffs' overtime and 'off-the-clock' claims. (Doc. Nos. 89, 90). Even if Heartbreakers did not intend on seeking appellate relief, it would seem that a more prudent course of action would be to delay sending notice until those motions have been resolved because their outcome may well affect what potential plaintiffs are ultimately told about this case in any notices.

## D.    The Public's Interest

The public—individuals as well as businesses—have an interest in obtaining clarity on the interaction between collective action notice procedures and the existence of arbitration agreements. Although this case involves exotic dancers, and though "there are some occupations for which all of us in society have a basic understanding," *Kibodeaux*, 2022 WL 92856, at *8, the Court's Order and analysis relative to arbitration agreements and the similarity question will affect collective actions involving all manner of occupations, from truck drivers to nurses.

Further, in light of the fact that *Swales* is short on the specifics when it comes to how courts should apply "rigorous" scrutiny, it stands to reason that temporarily staying the Order so that it might be reviewed by the Fifth Circuit may ultimately produce further appellate guidance about the standards to be applied.

## **CONCLUSION**

For the foregoing reasons, Defendants Mike Armstrong, Peggy Armstrong, and A&D Interests, Inc., d/b/a Heartbreakers Gentleman's Club, ask the Court to temporarily stay their compliance with the Order to allow for orderly appellate review, and for any other relief to which they may show themselves justly entitled.

Respectfully submitted,

WALLACE & ALLEN, LLP

 _/s/ William X. King_
Casey T. Wallace
State Bar No. 00795827
SDTX Bar. No. 20117
William X. King
State Bar No. 24072496
SDTX Bar No. 1674134
440 Louisiana St., Suite 1500
Houston, Texas 77002
Tel: (713) 227-1744
Fax: (713) 227-0104
cwallace@wallaceallen.com
wking@wallaceallen.com
**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document has been served on counsel of record in accordance with the Federal Rules of Civil Procedure via email and/or filing through the Court's ECF System on January 20, 2022.

Jarrett L. Ellzey
Leigh Montgomery
Ghazzaleh Rezazadeh
ELLZEY & ASSOCIATES, PLLC
1105 Milford Street
Houston, Texas 77066
Tel: (713) 554-2377
Fax: (888) 995-3335
jarrett@ellzeylaw.com
leigh@ellzeylaw.com
ghazzaleh@ellzeylaw.com
**ATTORNEYS FOR PLAINTIFFS**

*/s/ William X. King*
William X. King

## **CERTIFICATE OF CONFERENCE**

I certify that on January 18, 2020, I contacted Plaintiffs' counsel, Leigh Montgomery, regarding the relief sought in this motion. Ms. Montgomery indicated on January 20, 2022 that Plaintiffs are opposed to the relief sought.

_/s/ William X. King_
William X. King